**In the Matter of David L. COLSON, Respondent.**

No. 62054.

Supreme Court of Missouri, En Banc.

May 11, 1982.

G. William Weier, Crystal City, for informant.

W. Munro Roberts, Jr., St. Louis, for respondent.

MORGAN, Judge.

This case involves a disciplinary proceeding initiated by the Advisory Committee under Rule 5. The information charged respondent with two counts of neglecting his professional duties to his clients and failing to take those actions necessary to protect their legal interests.

By order of this Court, the Honorable H. A. Kelso was appointed as Master. Certain stipulations of fact were prepared and filed by the parties, but the Master had rendered a decision prior to finalization of the same. Said stipulation is now before the Court and upon review does not conflict with the findings of fact filed by the Master.

Nothing would be gained by stating the facts underlying the charges in any great detail and we recite only enough to demonstrate the basis therefor.

Reference Count I, it is found that respondent, licensed in 1955 and maintaining a practice in Farmington (St. Francois County), was employed during March of 1969 by Gary and Patricia Dane to represent them and their young son in a suit for damages for personal injuries arising from an accident wherein the son was struck by an automobile driven by one Richard M. Bratten. Respondent agreed to represent them under a contingent-fee contract. However, suit was not filed until February 1, 1974—the last day before the applicable statute of limitations expired. By that time, the alleged wrongdoer had died and suit was filed eventually against his estate. Over the next two years, trial dates were set at least six times with the Danes being notified only of the last setting on March 10, 1976. It is not clear as to whether they were thereafter made aware that their case would not be presented on that date; but in any event, they did appear in Farmington. Respondent was trying another case in the same court and advised that their case would have to be reset again. Thereafter, without knowledge or permission of the Danes, respondent allowed the suit to be dismissed without prejudice. New counsel was hired and based on a refiled petition the cause was tried and a judgment in the amount of $50,000 was obtained. As to this Count, respondent admitted being dilatory and did not seek to justify his conduct. By explanation, however, he made it apparent that an absence of witnesses to the accident made him fear an inability to establish liability of the deceased. Upon reflection, he appreciates that he should have advised his clients instead of allowing the file to remain inactive in his office. In passing, we

do note that new counsel had the advantage of two eye witnesses to the accident.

Count II revealed that respondent was employed as local counsel on May 25, 1973, by a forwarding law firm in Philadelphia to represent Subaru of America reference a claim against the latter and a lien against certain automobiles. Respondent filed an answer but allowed entry of a default judgment against his client on December 12, 1973, in the amount of $3,500. His first knowledge of the default judgment, according to the evidence, was in May of 1976 when he was so advised by the forwarding firm. Numerous inquiries by this foreign law firm were ignored by respondent until April of 1979. Thereafter, he was able to settle the judgment for $3,000 to the satisfaction of the client.

The informant agrees, and the Master found, that respondent is a person of good character and that there was no evidence of fraud or personal gain. The sole problem is one of neglect of the clients' business.

The report [1] of the Master indicates some thought that respondent only reflects to an extreme the unnecessary delays tolerated by the judicial system; but he recommends "a severe reprimand at least, a short suspension at most" on the premise that "[t]here is no greater friend of anarchy than the loss of confidence in the orderly judicial process."

Such conclusions are helpful but advisory only as it remains our responsibility to review the evidence and reach a determination. *In re Panek*, 585 S.W.2d 477, 479 (Mo. banc 1979). Having done so, we conclude that respondent was guilty of improper conduct in connection with both matters. DR 6–101(A)(3) cautions that a lawyer shall not neglect a legal matter entrusted to him; and under Canon 9, Ethical Consideration (EC) 9–2 charges that: "In order to avoid misunderstandings and hence to maintain confidence, a lawyer should fully and promptly inform his client of material developments in the matters being handled for the client." Failure to make *any* effort to comply constitutes a neglect of duty and a predicate for discipline. *In re Eldredge*, 530 S.W.2d 221 (Mo. banc 1975). *See* Annot. 96 A.L.R.2d 823 (1964).

Respondent has assured the Advisory Committee that his office procedures have been revamped and that he has taken steps to lessen his workload to avoid any such instances in the future.

Having considered the entire record as presented, we conclude that a reprimand is adequate and proper.

Respondent is hereby reprimanded and the costs of this proceeding are assessed against him.

DONNELLY, C. J., and RENDLEN, SEILER, HIGGINS and BARDGETT, JJ., concur.

WELLIVER, J., concurs in part and dissents in part in separate opinion filed.

WELLIVER, Judge, concurring in part and dissenting in part.

I concur in the holding that disciplinary action is required.

I dissent as to the discipline recommended. I believe that the public has a right to expect a higher standard of proficiency and competency than that exhibited by the respondent attorney. I do not believe that we can assure the public of a higher standard of legal service by the application of "gentle wrist slapping." I would order respondent suspended for a period of six months.

---

1. A small part thereof reads: "In no other phase of justice has there been more condemnation by laymen than in the slowness with which the wheels of justice turn.... Literature is replete with comment on the length of time taken to adjudicate both civil and criminal cases. Charles Dickens in his famous *Jarndice v. Jarndice* tells how the little boy 'promised a new hobby horse when the case was finished, grew up, bought a real horse and rode away' and still the case droned on...."