In the Matter of David F. WILLIAMS, Respondent.

No. 67096.

Supreme Court of Missouri, En Banc.

June 17, 1986.

Rehearing Denied July 15, 1986.

Richard E. Dorr, Springfield, for Bar Committee.

Mark E. Fitzsimmons, Springfield, for respondent.

RENDLEN, Judge.

The Bar Committee of the Thirty-first Judicial Circuit instituted disciplinary proceeding against respondent and following formal hearing found probable cause to believe respondent was guilty of profes-

sional misconduct. An Information was filed in this Court charging violation of Rule 4 DR 9–102(A) and (B)[1] in that respondent failed to make timely, accurate and adequate accounting of funds to a client. Respondent answered admitting the violation but seeking dismissal of the Information because his conduct did not constitute a knowing and intentional violation. The Honorable L. Thomas Elliston, Presiding Judge, Twenty-ninth Judicial Circuit, was appointed Master, and after plenary hearing the Master in his findings of fact and conclusions of law determined that respondent had violated Rule 4 DR 9–102(B) and (C),[2] and the violation was willful, deliberate, and inexcusable. He recommended that respondent be disbarred.

■ In disciplinary proceedings we must review for ourselves the evidence, the credibility, weight and value of the witnesses, and determine all fact issues necessary to a decision. *In re Elliott,* 694 S.W.2d 262, 262 (Mo. banc 1985).

Here the fact of violation of the Disciplinary Rules is not in dispute. Respondent undertook to represent a client, Marvin E. Miller, in a Workmen's Compensation claim. A settlement was reached in the amount of $6,000 and on July 16, 1984,

Maryland Casualty Company issued its $6,000 draft payable to respondent and Miller. On or about July 17, 1984, respondent and Miller agreed that respondent would receive $1,486.64 for his fee and expenses incurred and Miller would receive $4,513.36, the balance of the $6,000. Miller endorsed the check, leaving it in respondent's custody and was informed that "within a few days" respondent would deliver a check to Miller in the amount of $4,513.36.

On July 18, 1984, respondent deposited the $6,000 draft into an account titled "Law Clinic of David F. Williams Client Funds Account," an account which was overdrawn at that time. On July 20, 1984, a check in the amount of $4,513.36 was drawn on that account and forwarded to Miller. However, that check was returned for insufficient funds on August 3, 1984, and again on August 14, 1984. Subsequently respondent's law office wire-transferred funds to Miller in the amounts of $500 on August 17, 1984, and $1,000 on August 21, 1984, leaving a balance due the client of $3,013.36. On August 31, 1984, another check in the amount of $3,013.36, drawn on the account of "Law Clinic of David F. Williams Client Funds Account," was for-

---

**1.** In charging respondent with violation of Rule 4 DR 9–102(A) and (B) the Bar Committee made an outdated citation to Rule 4. As the Master found, the proper citation should have been to DR 9–102(B) and (C), but the Bar Committee overlooked an October 23, 1984, amendment to Rule 4. Respondent acknowledged that the language of post-amendment subparts (B) and (C) is substantially the same as the language of pre-amendment subparts (A) and (B), and he was aware of the improper conduct being charged.

**2.** *See supra* note 1. DR 9–102 of Rule 4, as amended October 23, 1984, provides in pertinent part as follows:

(B) All funds of clients paid to a lawyer or law firm, other than advances for costs and expenses, shall be deposited in one or more identifiable insured depository accounts maintained in the state in which the law office is situated, and no funds belonging to the lawyer or law firm shall be deposited therein except as follows:

(1) Funds reasonably sufficient to pay service charges may be deposited therein.

(2) Funds belonging in part to a client and in part presently or potentially to the lawyer or law firm must be deposited therein, but the portion belonging to the lawyer or law firm may be withdrawn when due unless the right of the lawyer or law firm to receive it is disputed by the client, in which event the disputed portion shall not be withdrawn until the dispute is finally resolved.

(C) A lawyer shall:

(1) Promptly notify a client of the receipt of his funds, securities, or other properties.

(2) Identify and label securities and properties of a client promptly upon receipt and place them in a safe deposit box or other place of safekeeping as soon as practicable.

(3) Maintain complete records of all funds, securities, and other properties of a client coming into the possession of the lawyer and render appropriate accounts to his client regarding them.

(4) Promptly pay or deliver to the client as requested by the client the funds, securities, or other properties in the possession of the lawyer that the client is entitled to receive.

warded to Miller, but on September 5, 1984 it too returned for insufficient funds. Throughout this period, Miller made numerous requests to respondent's office for his money, but did not receive his funds from respondent or respondent's law office until September 10, 1984, five days after he filed a complaint with the Thirty-first Judicial Circuit Bar Committee.

Although as discussed below respondent offers the circumstances surrounding the above events, including his wife's role in the events and his ignorance of the problems encountered in paying Miller, in mitigation to harsh punishment, he does not offer such circumstances to deny his guilt. It is admitted and this Court finds that respondent failed to make timely, accurate and adequate accounting to a client in violation of DR 9–102(B) and (C).

■ The sole issue remaining is to determine appropriate punishment. In requesting sanctions less than disbarment, respondent submits his was not an intentional violation. Such claim is based upon the following circumstances surrounding the facts constituting the violation. Respondent and his wife each held signature authorization for the trust account and he had delegated to his wife (as secretary and bookkeeper) the tasks of making the daily bank deposits, writing checks and balancing the checking accounts. Respondent testified that he did not know at the time of the deposit of the $6,000 check that the trust account was overdrawn, nor did he know of certain transactions which produced the insufficiency. Rather such problems were caused by his wife who did not inform him of the problems. Similarly, respondent and his wife testified that he was not made aware of the delays in paying Miller or the return of the checks for insufficient funds nor was he aware of Miller's attempts to contact him and thought Miller had been paid promptly.

Although respondent recognizes his ultimate responsibility for the acts of his employee-wife regarding the trust account and therefore does not offer them in defense to the charges, he does offer his ignorance in mitigation. We cannot rule out the possibility that such circumstances might work in mitigation in a different case, but in view of all the evidence here, respondent's assertion must fail. The record discloses that with respondent's knowledge the trust account long had been in serious disarray and he had taken little if any corrective action. Yet despite his knowledge of this disarray respondent knowingly exposed Miller's funds to the risks of this unstable account and must be held accountable to the same degree as if he had known of the specific problems encountered with the Miller payment. Having been aware of ongoing problems with the trust account, including return of checks for insufficient funds, credence cannot be afforded his plea of ignorance.

Respondent knew in December 1983 that problems were developing in the trust account. Checks drawn on the account and made payable to various courts were returned for insufficient funds. Respondent testified that he was not sure whether the account was ever "straight" after that time. Although he talked to his wife about these problems, respondent never attempted to review the account or obtain a proper accounting. Not once from January 1984 to July 1984 did respondent review the check stubs or the bank statements in an attempt to establish an understanding of the account. He testified that his only contact with the account "would be to see the envelopes unopened two and three months after they'd been received, the bank statements, and to holler about that." When he saw such unopened envelopes, which he recognized as containing bank statements, he would merely talk to his wife about the fact that the account needed balancing and that they needed to know what was "going on" with the account. Although he threatened to take over supervision of the account from his wife, he failed so to do. Yet respondent testified he was so concerned that checks drawn on the account might be returned for insufficient funds he began making payments, including court filing fees, by cash or money

order rather than by check. Respondent testified that although he thought about straightening out the account, or that he should have opened a new trust account, he did neither. He also testified that after May 1983 he did not maintain a law office general checking account and if it became necessary to write a check for his firm he drew it on the trust account.

Additionally it is demonstrated by the evidence that subsequent to deposit of the $6,000 draft but prior to return of the $4,513.36 check for insufficient funds, a $3,100 check was drawn on respondent's trust account by his wife, for payment on an amount due by respondent to the Internal Revenue Service. Respondent testified that check was written and cashed without his knowledge, and upon that check respondent places principal blame for his trust account's deficiencies regarding Miller's funds. However, the evidence also shows that before the check to Miller could clear the bank, $1,400 was transferred from respondent's trust account to his landlord's bank account for payment of office rent, and respondent was paid his $1,200 fee on Miller's case from the account. Respondent also on August 13, 1984, cashed a $1,000 check from his trust account made payable to cash. This check had been signed by his wife in blank, and carried a brief time by respondent before cashing. Despite the fact that his $1,200 fee already had been taken from the account, respondent testified that he thought this $1,000 was fee from the Miller settlement though he made no attempt to verify that any funds in his trust account belonged to him.

Though, as noted above, respondent attempts to avoid the harsh result of disbarment by characterizing his violation as unintentional, it is clear from the evidence that while he may not have known of the specific problems with the Miller payment, he was well aware of prior problems with the account, including return of checks for insufficient funds, and that he knowingly and intentionally failed to correct the ongoing problems or supervise the account. The evidence establishes that he should have known a problem such as Miller's

would soon occur, and that he should have reviewed the account and taken corrective action to ensure that Miller would receive the funds belonging to him.

In deciding the appropriate sanction, we recognize that the primary purpose of this proceeding is not to punish respondent, but to inquire into his fitness to continue as an attorney. *In re Maier*, 664 S.W.2d 1, 2 (Mo. banc 1984). "Any discipline imposed has as its objective the protection of the courts and the public and maintenance of the integrity of the profession and the courts." *Id.*

We further recognize that, as we held in *In re Mentrup*, 665 S.W.2d 324, 325 (Mo. banc 1984):

The misappropriation of a client's funds is a serious matter. *In re Robison*, 519 S.W.2d 1 (Mo. banc 1975). It is always a ground for the disbarment of an attorney that he has misappropriated the funds of his client, either by failing to pay over money collected by him for his client or by appropriating to his own use funds entrusted to his care. *In re Oliver*, 365 Mo. 656, 285 S.W.2d 648, 655 (1956). That respondent has made restitution of the converted funds is no defense to these charges. *In re Kohlmeyer*, 327 S.W.2d 249, 252 (Mo. banc 1959). Neglect of duty to one's client also justifies disciplinary action. *In re Alpers*, 574 S.W.2d 427, 428 (Mo. banc 1978).

From our review of the entire record we are unimpressed with respondent's attempt to avoid disbarment by characterizing his misconduct as unintentional. While it is true that we recently stated "an appropriate remedy for *willful* conversion or misappropriation of client's funds is disbarment," *In re Mendell*, 693 S.W.2d 76, 78 (Mo. banc 1985) (emphasis added), disbarment is no less appropriate here. Respondent's offer of his ignorance as mitigation to harsh punishment must fail where he had knowingly and intentionally failed to correct the ongoing problems with the trust account, given that he knew of the account problems. It is readily apparent from the evi-

dence that respondent is not the innocent victim of an errant employee-spouse. We cannot allow an attorney to escape ultimate responsibility for mishandling of a client's funds where he knowingly and intentionally ignores trust account problems and demonstrates an almost total disregard for the protection of those funds. Certainly where an attorney misappropriates a client's funds, protection of the public is uppermost in our minds and disbarment is generally appropriate in such cases. Given the nature of the violation, and respondent's long disregard for the protection of his clients' funds, respondent's testimony regarding recent improvements upon his accounting system does not offer sufficient safeguard to the public interest and therefore cannot alter the result here.

Respondent is ordered disbarred.

All concur.