**In re Peggy Thompson HARDGE, Respondent.**

**No. 66941.**

Supreme Court of Missouri,
En Banc.

July 15, 1986.

Ben Ely, Jr., St. Louis, for Bar Committee.

Doris Gregory Black, St. Louis, for respondent.

BILLINGS, Judge.

Disciplinary proceeding by the Bar Committee of the Twenty-Second Judicial Circuit of Missouri pursuant to Rule 5. The information by the Bar Committee charged respondent, Peggy Thompson Hardge with violating Rule 4, DR 6–101 and DR 7–101(A).[1]

This Court appointed the Honorable Daniel J. O'Toole as Master to take evidence and make findings of fact and conclusions of law. The Master's report having been filed herein, and the issues briefed and argued in this Court, we find there is substantial evidence of violations warranting discipline and reprimand of respondent.

We first note that the Master's findings, conclusions and recommendation are helpful in attorney disciplinary proceedings, but they are advisory only. It is our duty to determine the credibility of witnesses, to review the evidence and to make our own determination of the facts. *Matter of Colson,* 632 S.W.2d 470 (Mo. banc 1982); *In re Connaghan,* 613 S.W.2d 626 (Mo. banc 1981).

The evidence shows that attorney Justin Meehan referred complainant Elois Woodward to respondent to handle her bankruptcy case. Woodward spoke with respondent on the telephone first, but the initial interview at the office was conducted by an associate of respondent, Doris Black. Black asked Woodward questions regarding her creditors, and had her sign a "Debtor's Petition" for bankruptcy. Before leaving, Woodward wrote a check to respondent in the amount of $210.00, which represented $150.00 down on an attorney's fee and $60.00 in filing fees. Woodward understood that her petition would be filed promptly, and that respondent would notify her if more information was needed.

Woodward was a laundry supervisor at City Hospital, earning approximately $500.00 every two weeks. Her wages were being garnished in the amount of approximately $50.00 every two weeks.

The only evidence of any contact between respondent and Woodward over the next four months is a copy of a letter

---

1. DR 6–101. Failing to Act Competently
   (A) A lawyer shall not:
   (1) Handle a legal matter which he knows or should know that he is not competent to handle, without associating with him a lawyer who is competent to handle it.
   (2) Handle a legal matter without preparation adequate in the circumstances.
   (3) Neglect a legal matter entrusted to him.
   Rule 4, DR 7–101(A) provides:
   DR 7–101. Representing a Client Zealously
   (A) A lawyer shall not intentionally:
   (1) Fail to seek the lawful objectives of his client through reasonably available means permitted by law and the Disciplinary Rules, except as provided by DR 7–101(B). A lawyer

does not violate this Disciplinary Rule, however, by acceding to reasonable requests of opposing counsel which do not prejudice the rights of his client, by being punctual in fulfilling all professional commitments, by avoiding offensive tactics, or by treating with courtesy and consideration all persons involved in the legal process.
   (2) Fail to carry out a contract of employment entered into with a client for professional services, but he may withdraw as permitted under DR 2–110, DR 5–102, and DR 5–105.
   (3) Prejudice or damage his client during the course of the professional relationship, except as required under DR 7–102(B).

respondent claims she mailed to Woodward. The letter told Woodward that her petition would not be filed until the full fee was paid. Woodward claims she never received this letter, and that she was unaware that full payment was required before any action would be taken. Eventually, Woodward learned of this requirement from attorney Meehan. She immediately paid the balance of $150.00 to respondent on October 27, 1981, and was told that her petition would be filed. The check cleared the bank for payment on November 9, 1981. Respondent still failed to file the petition despite the fact that she now had her full attorney fee, the filing fee, and her client's wages were still being garnished.

Although respondent asserts that the attorney-client relationship was terminated later in November because of an "abusive" phone call from Woodward's daughter to respondent's secretary, the fact remains that respondent did not return her client's money until March, 1982. Woodward and respondent finally met March 24, 1982. Woodward demanded her money back, received a check for $200.00 and instructed respondent to stop all bankruptcy proceedings. In April, 1982, Woodward secured the services of another attorney. Her bankruptcy petition was filed and creditors ceased garnishment procedures.

At the time respondent undertook representation of Woodward, respondent was not admitted to practice in the Bankruptcy Court of the United States District Court for the Eastern District of Missouri. At no time did respondent tell her client that she was not admitted to practice in the Bankruptcy Court, nor is there any evidence showing a financial association with a lawyer competent to handle the matter.

Respondent contends that Woodward signed a written contract for legal services, which made it clear that respondent would not initiate bankruptcy proceedings until all of her fee had been paid. Woodward denied ever signing such contract, and respondent failed to produce the signed contract.

Rule 4, DR 6–101(A) prohibits a lawyer from (1) handling a legal matter he knows he is not competent to handle without associating with him a lawyer who is competent to handle it, and (3) neglecting a legal matter entrusted to him. We believe that the evidence presented in the record demonstrates that respondent violated DR 6–101(A)(1) and (3). When respondent accepted a bankruptcy case knowing she was not admitted to practice in the Eastern District, and without associate counsel, she violated the rule. A delay of almost one year in filing a bankruptcy petition amounts to neglect of a matter entrusted to her.

The findings also support the conclusion that respondent violated DR 7–101(A). Rule 4, DR 7–101(A) prohibits a lawyer from (1) failing to seek the lawful objectives of his client; (2) failing to carry out a contract of employment, and (3) prejudicing or damaging his client. There is no doubt that by not filing the bankruptcy petition for Woodward between June, 1981 and March, 1982, respondent failed to seek the lawful objective of her client. There was a contract of employment entered into for professional services, to file bankruptcy, and those services were never carried out. The delay in filing the bankruptcy case meant that Woodward continued to have her wages garnished from her paycheck. Woodward was damaged by not receiving her total paycheck as she would have had the bankruptcy petition been timely filed.

The Bar Committee urges that the conduct of respondent warrants disbarment. In deciding the appropriate measure of discipline, we are mindful that the instant proceeding is designed not with a primary purpose of punishment, but as an inquiry into respondent's fitness to continue as an attorney, and any discipline imposed has as its objective the protection of the courts and the public and the maintenance of the integrity of the professions and the courts. *In re Haggerty*, 661 S.W.2d 8 (Mo. banc 1983).

Having considered the entire record as presented we conclude that reprimand is adequate and proper. The failure of respondent to timely pursue her client's legal interests represents conduct that is simply unacceptable. The consequences of such conduct harms both the public and the legal community. Our action here is meant to protect the public and the profession by making it clear to both that the Court expects lawyers to be diligent and competent in all aspects of handling their clients' business.

Respondent is hereby reprimanded and the costs of this proceeding are assessed against her.

HIGGINS, C.J., and DONNELLY, WELLIVER and ROBERTSON, JJ., concur.

BLACKMAR, J., concurs in result in separate opinion filed.

RENDLEN, J., dissents in separate opinion filed.

BLACKMAR, Judge, concurring in result.

The record adequately supports reprimand because of the delay in handling the client's business. I have reservations about the portion dealing with respondent's having accepted a bankruptcy case at a time when she was not admitted to practice in the United States District Court. It is not unusual for an attorney to accept a case in a court or tribunal in which he or she has not been formally admitted, and to initiate an application for admission so as to be able to go forward when appearance is necessary.

It is also common practice, in cases in the Supreme Court of the United States and elsewhere, to obtain the signature of an admitted attorney. Admission and competency are not the same.

Here the petition in bankruptcy was never completed and filed and so I doubt that the failure to obtain admission furnishes additional ground for reprimand.

RENDLEN, Judge, dissenting.

I respectfully dissent.

The separate opinion of Blackmar, J. ably addresses the defects in the principal opinion's conclusion regarding respondent's competency in bankruptcy. There are, however, other basic flaws in the majority's factual statements regarding the circumstances surrounding respondent's failure to file complainant's bankruptcy petition. This Court's independent role in reviewing evidence in attorney disciplinary cases provides no license to disregard testimony riddled with contradictions and inconsistencies. The majority accepts at face value and ultimately relies in substantial part for its reprimand upon the allegations of inaction by respondent between June 1981 and March 1982. Little attention is given to the crucial chronology of that ten-month period and the patent confusion of the complainant's testimony as shown in the following evidence:

The beginning of the attorney-client relationship was established by a canceled check constituting initial payment to respondent on June 17, 1981 although complainant's testimony vacillated between June and March as the point of beginning. Complainant at another place testified that she paid the balance of her fee in July, however, a canceled check establishes the date as October 27. The evidence shows complainant's awareness of a balance due on her fee, but a misunderstanding that the filing of her bankruptcy petition was contingent upon full payment of the fee. Complainant's testimony was also conflicting on the question of whether she signed a standardized "contract" for legal services which made clear this requirement. Respondent sent a letter to complainant on September 23 notifying her that progress on the case awaited payment of the fee. The letter is part of the record, though complainant contended nonreceipt of the letter—a problem she apparently encountered with other incoming mail because of her children.

The fee arrangement in this case was a usual one and it is assumed in the Master's

Report and by the majority that no duty arose on the part of respondent until the final October 27 payment. Unfortunately, neither the master nor the majority further review the evidence as to matters where it favors respondent.

Respondent had previously encountered difficulty with the original payment on her fees when complainant's bank briefly delayed payment of complainant's initial check. Understandably respondent waited until the second check "cleared" on November 9 before resuming her activity on this case. Respondent testified that within a day or two after that date, complainant's daughter, angry over the remaining delay called and terminated the attorney-client relationship on behalf of her mother. Complainant herself called later that day with the same message. This significant time frame is the brief period from November 9 to the date of the phone calls. Also of prime importance is the fact that during the same period complainant called respondent several times and expressed doubts (for reasons not related to the alleged delay) about going forward with the bankruptcy. Complainant's lack of urgency is further shown during the next months where respondent made good faith attempts to arrange meetings with complainant at respondent's office in order to return complainant's files and money, only to have complainant fail to appear on several scheduled appointments. Complainant admitted her failure to appear for at least one such appointment and confirmed canceling the contract for respondent's services. When asked the date of cancellation, she first stated March 1982, then extended her estimate to sometime in 1982 before settling on "possibly" January 1982 as the time the termination of the attorney-client relationship occurred and there is no doubt that $200 of the amount advanced on fees was returned by respondent March 24, 1981. Neither complainant nor the Bar Committee raised an issue regarding return of the amount advanced on fees, yet the majority opinion complains of the delay without recounting the substantial evidence relevant to the issue, including the complainant's apparent problems with the mail. The same can be said of the majority's conclusion that respondent failed to diligently pursue complainant's legal interests. The slender thread of evidence supporting that conclusion is the unspoken assumption that complainant did not discharge respondent until January of 1982 as contrasted the testimony of respondent that this occurred in November. Given the glaring and repeated inconsistencies in complainant's testimony, and the dearth of evidence pointing to bad faith of any kind I submit this record does not demonstrate a need for reprimand by this Court. Before we issue an order permanently marking this attorney's record with its corresponding cloud on reputation we must not only carefully examine all the evidence but measure the performance against the realities of the daily demands upon a busy practitioner's time, nor lose sight of the clearly recognizable fact that complainant was a difficult client given to change on whim and with a less than consistent memory.

In fairness, it must be noted that the memories of both complainant and respondent could not have been aided by the three years delay before the Twenty-second Judicial Circuit Bar Committee held a formal hearing on this matter. Complainant did little to make matters easy or fully cooperate during her relationship with respondent, and all these things clearly made it difficult for respondent to effectively serve her client. DR 2–111(C)(1)(d). Finally in our "after the fact view" of this record we should be mindful that notwithstanding the difficult client with whom she had to deal, respondent devoted considerable effort and time to a cause for which in the end she received little compensation.

Under the circumstances I cannot concur with the order of reprimand issued by this Court today.