**In re Roger J. STAAB, Respondent.**

No. 67239.

Supreme Court of Missouri,
En Banc.

Nov. 18, 1986.

John J. Kitchin, Kansas City, Informant.

Hollis H. Hanover, Kansas City, for respondent.

BILLINGS, Judge.

Disciplinary proceeding by the Bar Committee of the Sixteenth Judicial Circuit of Missouri pursuant to Rule 5.[1] The information of July 5, 1985, and a subsequent amended information of December 9, 1985, charged that respondent Roger J. Staab violated the following Disciplinary Rules (DR) of Rule 4: DR 6–101(A)(3), and DR 1–102(A)(5) and (6).[2]

This Court appointed the Honorable Ward B. Stuckey, Associate Circuit Judge, Sixth Judicial Circuit, as Master to take evidence, to make findings of fact and to reach conclusions of law. The Master's report concluded that respondent had violated the disciplinary rules as charged and recommended suspension of the respondent for a period of sixty days. After briefs and argument before this court, we agree that discipline is necessary. However, we conclude that the evidence of respondent's violations warrant a public reprimand.

■■■ The Master's findings, conclusions and recommendation, although necessary to this Court's orderly supervision of the bar, are still essentially advisory. *In re Hardge*, 713 S.W.2d 503, 504 (Mo. banc 1986). This Court must itself review the evidence, assign credibility to witness testimony, and make all necessary factual determinations. *Hardge*, at 504; *In re Williams*, 711 S.W.2d 518, 519 (Mo. banc 1986); *In re Elliott*, 694 S.W.2d 262, 262 (Mo. banc 1985). Guilt of the respondent must "be established by a preponderance of the evidence," in disciplinary proceedings. *Elliott*, at 263.

---

1. All references are to the Missouri Supreme Court Rules. Disciplinary Rule references (DRs) in the body of this opinion are to former Rule 4, the Code of Professional Responsibility. Former Rule 4, effective from January 1, 1971, governed during the period which includes the incidents which give rise to this proceeding. The Code of Professional Responsibility has now been replaced by the Rules of Professional Conduct as adopted on August 7, 1985 and effective on January 1, 1986. The result here would not be altered by the application of the "new" Rule 4.

2. DR 6–101. Failing to Act Competently
 (A) A lawyer shall not:
 \* \* \* \* \* \*
 (3) Neglect a legal matter entrusted to him.
 DR 1–102. Misconduct
 (A) A lawyer shall not:
 \* \* \* \* \* \*

 (5) Engage in conduct that is prejudicial to the administration of justice.
 (6) Engage in any conduct that adversely reflects on his fitness to practice law.
We note further that an additional charge might have been filed on these same facts:
DR 1–102. Misconduct
(A) A lawyer shall not:
 \* \* \* \* \* \*
 (4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.
The informations do not contain a separately enunciated charge of dishonesty. Though implicit on the facts, a charge of dishonesty in dealing with clients was not briefed and argued. Therefore, this is not considered for purposes of determining respondent's guilt. Still, the honesty and forthrightness required of all members of this State's bar by this rule weighs in the balance which determines the proper penalty to be assessed against respondent.

The Bar Committee's July 1985 information basically alleges that respondent has repeatedly failed to cooperate in its investigation of complaints against him. In its December 1985 information, the committee recounted three additional charges. It first charged that respondent had neglected a matter entrusted to him by Richard D. Fasching. Second, it detailed another count of neglect in a matter entrusted to him by Dorothy L. Lane. Finally, it contained a further allegation of non-cooperation in the Lane matter.

The facts are not in dispute. Respondent candidly admits in his brief that his handling of the claim of Dorothy L. Lane constitutes neglect in violation of DR 6-101(A)(3).[3] In summary, Mrs. Lane retained respondent in December of 1977 in an attempt to gain workers' compensation in the death of her husband. Immediate filing was required in order to file within the applicable statute of limitations. Sometime after the filing of the claim respondent became convinced that the cause was without merit. However, he did not advise Mrs. Lane of his misgivings and the case continued on the docket. In fact, Mrs. Lane was produced for her deposition in July 1981.

In an April 1982 hearing, respondent asked that the file be held while he consulted his client about a voluntary dismissal. He failed to consult Mrs. Lane and the case was eventually dismissed for want of prosecution. Thereafter, respondent falsely represented to Mrs. Lane that the case was pending and viable. In fact, he sent to her a copy of a "Motion to Set Aside Dismissal", ostensibly filed in court. He asked for a medical authorization from her as late as September 1984.

During 1983, Mr. Fasching retained respondent to represent him when his Social Security disability benefits had been terminated. Respondent initially gained a favorable result for Mr. Fasching in the administrative review process; an administrative

law judge reinstated benefits after a hearing. However, the victory was short-lived as the Social Security Appeals Council reversed the award on its own motion. In early 1984, respondent filed suit in federal district court challenging the Appeals Council action.

On August 15, 1984, respondent received a show cause order from the United States District Court, Western District of Missouri, in the Fasching suit. The show cause order was issued because of respondent's failure to timely file a brief. On September 11, 1984, the federal district court dismissed the Fasching suit because of the respondent's failure to answer the show cause order.

Respondent argues that his inaction at the time was justified. He believed that Mr. Fasching belonged to a recently-certified class of denied or terminated disability claimants who would be automatically reconsidered by the Social Security Administration as required by then recent federal court order. See Polaski, et al. v. Heckler, 585 F.Supp. 997, 1003 (D.Minn.1984). Respondent argues that his belief was founded on his experience as well; another disability termination case in his practice had been automatically remanded under these decisions. That remand, however, occurred on January 22, 1985. Exh.Inf. No. 31.

Respondent misses the point. His neglect consists of his failure to properly respond to a valid show cause order of the federal district court. Respondent might have assisted the federal court by bringing recent decisions to the court's attention and noting their applicability to the Fasching case. This, he did not do.

Moreover, respondent spoke with Mr. Fasching approximately 75 times during the period of time after the case was dismissed on September 11, 1984. In April, 1985, Mr. Fasching learned on his own that his case had been dismissed. In the interim, respondent had repeatedly assured Fasching that his case was pending and

---

**3.** Respondent also indicates, and the Court agrees, that he would have been in violation of "new" Rule 1.3. "A lawyer shall act with rea-

sonable diligence and promptness in representing a client." Rule 1.3. Diligence.

that benefits were to be reinstated. Even after his client's discovery of the dismissal, respondent insisted that the case was pending in answer to an inquiry from Mr. Fasching. Respondent's personal belief that his client would be included in the *Polaski* class does not justify his failure to answer the federal show cause order or to notify Fasching promptly and honestly of the status of the suit.

On March 8, 1985, the informant requested that respondent respond in writing to complaints of Lisa Roach and Ronald Parker, which had been filed against him with the Bar Committee. A further request was issued on April 8, 1985 asking that he respond within the week. The second request informed respondent that the Bar Committee considered non-cooperation a violation of the disciplinary rules. When respondent failed to answer, the Committee issued a Notice of Formal charges on April 18, 1985 and set a hearing for May 9, 1985. A reply was finally received from respondent on May 8, 1985.

At the hearing, the Committee reviewed the history of prior complaints that had been filed against the respondent. The merits of these earlier complaints are not at issue here; only that information relevant to the charges of non-cooperation are recited. The Bar Committee notified respondent of a complaint filed by Mr. and Mrs. Greenfield on December 6, 1976. Included in that complaint was an allegation that respondent would not deliver their file to Greenfields' new counsel. After receiving no response, the Committee set an informal hearing for March 9, 1977. On the same date, respondent delivered the Greenfield file to their new counsel.

Nettie Mills filed a complaint against respondent in July, 1984. On August 6, 1984, the Committee wrote respondent concerning the matter. After no response, telephone contact was initiated on November 12th and December 6th of that year. Another written request was issued on February 4, 1985. The complaint was eventually dismissed.

Minnie Parker filed a complaint on March 5, 1985, against the respondent. The Committee on March 20, 1985 wrote the respondent and requested a written response within fifteen days. On April 16, 1985, the Committee wrote again. The next day respondent indicated by phone that he would respond immediately but it was not until May 14, 1985, at a formal hearing on another matter that respondent discussed the Parker case with the Committee. Ten days later, respondent did notify the Committee that the Parker case was set for a workers' compensation hearing in the fall. The disciplinary complaint was dismissed after the complainant failed to appear at later Committee hearings.

Over and above the prior problems, on May 8, 1985, the Kansas City Metropolitan Bar Association notified respondent of the complaint of Dorothy Lane and requested a written response. Subsequent letters were mailed by the Bar Committee on May 22nd, August 27th and September 18th of 1985. A member of the Committee contacted respondent by phone on October 15, 1985 and was assured of an immediate response but none had been received by October 22nd, when the Committee filed its Notice of Formal Charges.

Respondent admits in most of the instances to his failure to respond in writing to the Bar Committee. Moreover, he admits to having failed to appear at a hearing on November 14, 1985 scheduled for discussion of the Lane and Fasching matters. He says this nonappearance was inadvertent.

 It is true that this Court has not previously held that failure to cooperate with the Bar Committee in disciplinary matters is itself a violation of Rule 4. *See* Mo. Advisory Comm. Op., Formal Op. 117, at 6–10 (1983). However, the Bar Committee has the authority of this Court in its investigation and prosecution of disciplinary complaints. Rule 5; *see In re Page*, 257 S.W.2d 679, 682 (Mo. banc 1953) (Committee complaint against attorney disbarred from state courts). This Court joins a growing majority of states who explicitly

entertain as attorney misconduct the failure to cooperate with disciplinary authorities. *See* Formal Op. 117, at 6–11.

Isolated instances might be inadvertence or simple neglect. However, the well-evidenced repetition of non-cooperation on this record justifies the conclusion that respondent does not fully understand the profound duty imposed by his profession. The Bar Committee and its members "giv[e] their time and services to maintain a high standard in the legal profession and [are] entitled to expect at least a courteous response and a prompt co-operation." *In re Breding,* 188 Minn. 367, 368, 247 N.W. 694, 694 (1933). Certainly, this Court should expect no less of members of this self-regulating profession if the Court is to maintain the public's confidence and the profession's integrity. *See Williams,* 711 S.W.2d at 521.

The Court holds that the respondent engaged in conduct which is prejudicial to the administration of justice and which adversely reflects on his fitness to practice law, DR 1–102(A)(5) and (6), and that respondent has twice violated DR 6–101(A)(3) in neglecting matters entrusted to him. He admits to neglect in the Lane matter. As to the Fasching matter, the Court agrees with the Master's finding that respondent is guilty of this additional count of neglect. An attorney may not lightly disregard a show cause order with a resulting dismissal of his client's complaint.

■ "The privilege to practice law is only accorded those who demonstrate the requisite mental attainment and moral character." *In re Haggerty,* 661 S.W.2d 8, 10 (Mo. banc 1983). The principle aim in disciplinary proceedings is not punishment. *Williams,* 711 S.W.2d at 521. Instead, discipline is intended to protect the public and preserve the integrity of the legal profession. *In re Maier,* 664 S.W.2d 1, 2 (Mo. banc 1984). Nonetheless, a disciplinary judgment must be just to the public and must aim "to correct any antisocial tendency" of the attorney. *In re Montrey,* 511 S.W.2d 805, 806 (Mo. banc 1974). Such discipline may deter others who might engage in similar violations. *Id.* At a minimum, the public may "rely on an attorney's honesty and devotion to his clients' interests." *Haggerty,* 661 S.W.2d at 10.

■ Disbarment is the ultimate sanction of the court. *In re Mendell,* 693 S.W.2d 76, 78 (Mo. banc 1985). For disbarment to be appropriate, it must be demonstrably clear that the attorney is not fit to continue in this profession. *See Hardge,* 713 S.W.2d at 505. This Court has employed disbarment: when criminal charges have been proven or admitted, *see In re Frick,* 694 S.W.2d 473, 481 (Mo. banc 1985) (criminal conviction), *In re Dent,* 517 S.W.2d 72, 78 (Mo. banc 1974) (surrender of license accepted after plea of guilty in criminal case); when real or apparent financial gain has accrued to the attorney through mishandling of client funds, *Williams,* 711 S.W.2d at 522 (possibly unintentional); *Mendell,* 693 S.W.2d at 78 (clearly volitional); and for certain other outrageous conduct, *In re Connaghan,* 613 S.W.2d 626, 631–32 (Mo. banc 1981) (conduit for funds passed in legislative bribery attempt).

■ For isolated instances of misconduct or clearly inappropriate acts with minimal harm to the client, a reprimand may be more appropriate. *See In re Wendt,* 544 S.W.2d 3, 4 (Mo. banc 1976). Reprimand is used most often in simple neglect cases, *Hardge,* 713 S.W.2d at 505–06 (also involved incompetence to handle the matter entrusted); *In re Colson,* 632 S.W.2d 470, 471 (Mo. banc 1982). It is significant that respondent in this case did not seek personal gain by his actions. *Colson,* at 471. Moreover, there was no irreparable harm to the clients in the neglect cases.

■ Respondent enjoys a fine reputation among those persons with whom he has continuous professional contact—judges and opposing counsel. He has continuously maintained over 400 cases and closed between 100 to 150 cases per year. He has participated in the continuing legal education of the bar. Although no defense, a good reputation may be considered in determining the appropriate discipline.

*In re Miller,* 568 S.W.2d 246, 253 (Mo. banc 1978).

Respondent has presented credible evidence that trying personal circumstances may have clouded his judgment during some of the period in which these violations occurred. In addition, he has acted to ensure that neither caseload burden nor careless case management will affect him in the future. These reflect well on his future ability to practice.

 It is ordered that respondent be and he is hereby publicly reprimanded. Costs of this proceeding are assessed against respondent.

All concur.