In the Matter of Edmond H.
KINGHORN, Respondent.

No. 70176.

Supreme Court of Missouri,
En Banc.

Feb. 14, 1989.

Brian R. Plegge, St. Louis, for informant.

Stuart R. Berkowitz, St. Louis, for respondent.

BLACKMAR, Judge.

The respondent was admitted to the Missouri Bar in 1983. In May of 1986 he had an office at 111 South Bemiston in Clayton, in a practice which used the name "Kinghorn and Hyatt." Two "paralegals" worked in the office, one of these being Donald L. Erickson. Mr. Erickson occupied an office in the suite and used business cards listing "legal research, attorney briefs, paralegal training, investigations." His activities play a substantial part in the disciplinary charges against the respondent.

Our record is somewhat abbreviated because of the manner in which the formal hearing was conducted. The charges originated in a complaint by Terry S. Patterson about a fee of $2350 which she paid to the respondent. A five-count notice of formal hearing before the Advisory Committee was served on the respondent. He appeared with counsel at the appointed time. Before the hearing convened the staff counsel for the committee met with the respondent and his counsel to discuss a possible disposition of the charges. Under the proposed disposition the respondent would admit the truth of the facts stated in the information and would make restitution of $2350 to the client "before sundown." The staff counsel agreed that he would then "recommend" that the matter be disposed of by means of a reprimand, but he made it clear to the respondent and his counsel that he could not bind the committee and could not give any assurance that the committee would accept his recommendation. Because the facts of the information were admitted, no testimony was taken. The two counsel and respondent appeared before the committee in session. The respondent made a statement to the committee and answered numerous questions. He was advised that the committee would consider the recommendation and would reach a decision. It apparently decided not to accept the recommendation, for an information in five counts seeking disbarment was filed in this Court on January 26, 1988. The information is substantially the same as the notice of formal hearing.

A master was appointed[1] and a hearing held. The notice of formal hearing was received in evidence, inasmuch as the respondent had admitted the facts there stated. There is absolutely no support for a claim that the respondent's admission of the facts stated in the notice was the result of his having been misled or deceived. He no doubt made the admission in the hope of receiving lenient treatment, but without assurance of leniency. Neither Mrs. Patterson, who apparently was available at the formal hearing, nor Erickson testified be-

1. The Honorable Timothy J. Patterson, Judge of    the 23rd Judicial Circuit.

fore the master. The master found that the committee had established only Counts III, IV and V of the information, but nevertheless recommended disbarment. Although the master's report is simply a recommendation we do not find it necessary to discuss the two counts which he found not to have been established.

## Count IV

Count IV has to do with a listing placed in the yellow pages of the St. Louis telephone directory, under the heading "Attorney Referral and Information Service," and listing, in lower case, "Kinghorn and Hyatt, 111 S. Bemiston, 727–0123." There were four other listings under this heading, all in capital letters and some with additional advertising matter. The respondent's firm was also listed in the "Attorneys" section of the classified listings, along with a prominent display advertisement.

The respondent frankly admits that he did not operate an attorney referral service. He testified that the listing under that heading was procured by Mr. Erickson, without his knowledge or consent. The signed order to the publisher of the directory supports this contention. Nothing in evidence shows that Kinghorn directed Erickson to arrange the referral listing. The respondent testified that, when he discovered this listing, he reprimanded Erickson and instructed his staff to advise any persons who called in response to this listing that the listing was in error and that the office was a law office rather than an attorney referral service.

A lawyer called the listed number to inquire about the handling of a copyright matter. He was told that the attorney who handled those matters was out of the office and would call when he returned. The caller then asked for a referral to a lawyer who handled copyrights and was told that the office did not make referrals.

The master found that the maintenance of this listing constituted a "false or misleading communication" in violation of Rule

7.1 of the Rules of Professional Conduct (set out as our Rule 4).[2] We agree with this finding. Whether or not the respondent caused the initial listing, the evidence shows that he sought to reap benefits in the form of law business from persons who responded in the expectation of an unbiased reference to a lawyer. He of course could not erase the listing from the current edition of the yellow pages, but, when he learned about it, he was obliged to take affirmative steps so that all callers who were strangers to the office would be asked whether they were calling in response to the referral listing and advised of the error. The evidence of the one caller indicates that the first effort of the person answering the phone was to steer callers to the respondent's office. It makes no difference that this caller may have been a self-appointed tester. The listing raised questions which might properly be the subject of inquiries by members of the bar.

We therefore find that the respondent violated Rule of Professional Conduct 7.1 by reason of the facts alleged in Count IV of the information.

## Counts III and V

It is convenient to treat the very serious charges contained in Counts III and V together. On May 30, 1986, Terry Sue Patterson went to respondent's office to obtain legal representation in collecting child support due her pursuant to an Illinois judgment. The father of the child was then in Wichita, Kansas. She met with Erickson and the respondent spoke to her briefly while she was in Erickson's office. She signed a retainer agreement and a promissory note for $2350. There was no discussion with respondent as to the amount of this fee. It appears, however, that the child support owing at the time of her visit to the law office was less than the amount of the fee she agreed to.

The sum of $2350 was paid on June 2, 1986, by check signed by Mark A. Patterson, Terry's then husband, and payable to the respondent. The respondent was quite

2. Rule 7.1 provides that a lawyer "shall not make a false or misleading communication     about the lawyer or the lawyer's services."

aware that this check had been received and deposited in his account.

The respondent did very little toward collecting the child support. A letter on the respondent's stationery, dated July 28, 1986 and signed by Erickson, advised Mrs. Patterson that there had been a problem in getting the required documents from the court in Peoria, Illinois, but that the documents were then available and that she should make arrangements to appear at the office to sign the verified petition.[3] She signed the verification on a two-page petition on October 17, 1986 but there is no evidence that the petition was ever filed. Under date of November 20, 1986 Mrs. Patterson and her husband notified the respondent that they were terminating his services and instructed him to deliver the file and reimbursement of fees paid to another attorney. The respondent did not comply with these directions and Mr. Patterson made a further demand on December 8, 1986, directing return of the retainer "which should have a small portion taken for services rendered."

"A lawyer's fee shall be reasonable." Rule of Professional Conduct 1.5. This case presents a patent violation of that Rule. Here Mrs. Patterson sought to collect money due her and was induced to make an initial deposit of more than the amount then owed. Even though the figure may have been set by Erickson, the respondent was fully aware of the payment and had the use of the money for several months. He and Erickson seem to have been much more interested in getting the money into the office account than in serving the client. Conduct of this kind brings the legal profession into disrepute and cannot be too strongly condemned.

Respondent's counsel argues that the matter was a very intricate one because of the involvement of three states. This is no answer. The possible result should be considered in fixing the amount of the fee. If a client is going to have to pay more in fees than she is owed, she should be so advised. The respondent does not indicate any strategy for collecting the sums due which gave promise of success, and fails to show how a judgment in St. Louis County would be of assistance in making collection from a man in Wichita. Perhaps the claimant should have been referred to lawyers in Wichita, who could then obtain the papers from the Illinois court. The introduction of the Missouri court seems to present an additional complication which certainly could not be the basis for an enhanced fee.

The evidence also demonstrates violation of Rule 1.16(d),[4] in failing to make timely refund when the respondent's services were terminated. The respondent had knowingly collected an excessive fee and had a clear duty to refund at least the unearned portion. He attempts to justify his retention of the fee because the Pattersons had already complained to the bar committee and he was afraid that he would prejudice his disciplinary case by making any sort of refund. The attempted justification will not hold. The client's complaint to the committee would be entirely in order after the respondent failed to heed the initial demand. The duty to refund the money was plain, and there is absolutely no justification for keeping it in order to avoid a bad appearance in the disciplinary proceedings. Delay for this assigned reason aggravates the offense.

### The Sanction

The respondent's offenses against the Rules of Professional Conduct are serious. He treated his client very badly. His relative inexperience provides no justification. He should have known that he had collected far too much money. Nor can he assign in mitigation his reliance on a self-styled paralegal. The respondent improperly collected the money from his client and retained it long after he should have made refund. The public interest requires that

---

3. Counsel's suggestion that there were substantial difficulties in obtaining copies of the Illinois court proceedings, exemplified as provided in the Act of Congress, 28 U.S.C. § 1738, is preposterous. Peoria is one of the major cities of Illinois, and requests for such copies are undoubtedly presented daily.

4. Rule 1.16(d) provides *inter alia* "[u]pon termination of representation, a lawyer shall ... [refund] any advance payment of fee that has not been earned."

**942**

he not be allowed to continue in the practice until he gives assurance that he can handle clients' affairs responsibly. After comparing other recent cases, we do not believe, however, that this case requires the ultimate sanction of disbarment, which we invariably apply to lawyers who have willfully converted funds entrusted to them. *Matter of Mendell,* 693 S.W.2d 76 (Mo. banc 1985). *Matter of Williams,* 711 S.W.2d 518 (Mo. banc 1986). Such cases as *In re Littleton,* 719 S.W.2d 772 (Mo. banc 1986) and *Matter of Dorsey,* 731 S.W.2d 252 (Mo. banc 1987), are more clearly comparable. In these cases we decreed indefinite suspension, with leave to reapply after a period of time.[5]

There is a problem in this particular case. The respondent has not paid his annual enrollment fees for 1988 and 1989. He was therefore subject to suspension from practice pursuant to Rule 6.01(d), and he was notified of this suspension by certified mail on March 15, 1988. On May 13, 1988 his name was struck from the rolls of attorneys, along with others then delinquent. In contrast to *Matter of Murphy,* 732 S.W.2d 895 (Mo. banc 1987), there is no showing that he has practiced law while under suspension. We therefore make the rules violations here found a matter of record and specify that no application for reinstatement will be received until one year from the date of this opinion. The costs of the proceeding are assessed against the respondent.[6]

BILLINGS, C.J., and ROBERTSON, RENDLEN, HIGGINS and COVINGTON, JJ., concur.

WELLIVER, J., concurs in result.

---

5. The writer has expressed disagreement with the specification of a time period and has suggested that all suspensions should be indefinite. *See In re Littleton, supra* at 779 (Blackmar, J., concurring; *In re Dorsey, supra,* at 254 (Blackmar, J., concurring). Without retreating from these views, he has prepared this opinion in deference to the Court's established policy.

6. The respondent has not paid the $500 cost deposit required of him by our Order of March 8, 1988. Any application for reinstatement must be accompanied by tender of accrued costs and all arrearages in enrollment fees.