**In re Clinton ADAMS, Jr., Respondent.**

No. 68367.

Supreme Court of Missouri,
En Banc.

Oct. 13, 1987.

Stephen S. Brown, Kansas City, for inform.

Byron N. Fox, Kansas City, for respondent.

PER CURIAM.

This is a disciplinary proceeding instituted by the Sixteenth Judicial Circuit Bar Committee against respondent Clinton Adams, Jr., a licensed attorney. After informal and formal hearings, the Bar Committee filed an information charging respondent with three counts of professional misconduct. This Court appointed the Honorable Robert DeVoy, Judge of the Ninth Circuit, Special Master. The Master conducted a hearing, filed findings of fact and conclusions of law, and recommended that respondent be disbarred.

## I.

### A.

Count I charges that Helyn Carpenter (a/k/a Helyn McGautha) employed respondent in December, 1984, to represent her on federal charges pending against her for falsely claiming and obtaining a duplicate Internal Revenue Service refund check in the amount of $796.89; that in the course of that representation, respondent arranged a deferral of the federal prosecution conditioned on restitution; that respondent received $1,300.00 from Carpenter for the purpose of paying both his attorney's fee and for making restitution; that respondent failed to deliver client's funds for the restitution promptly; that respondent's restitution check when finally paid was returned for insufficient funds; and that the conditions of Carpenter's probation were not met as a result. The Bar Committee charges that these acts violate Rules of Professional Conduct, Rule 1.15 (a) and (b).

Count I further charges that respondent did not respond truthfully under oath to questions regarding his handling of Carpenter's funds posed by the Bar Committee, in violation of Rules of Professional Conduct, Rule 8.4.

Count II charges that Carpenter retained respondent in December, 1984, to represent her on a state claim that she illegally obtained and used food stamps issued by the Missouri Division of Family Services (the "Division") in the amount of $1,298.00; that respondent accepted a $1,300.00 cashier's check from Carpenter to be paid as restitution to the State; that respondent deposited the check in his client trust ac-

count but failed to make the agreed to restitution; that respondent allowed the State to obtain a judgment against Carpenter and failed to respond to a garnishment for his client's funds in his hands. The Bar Committee charges respondent with violations of Rules of Professional Conduct, Rule 1.15(b) and Rule 8.4(a), (c) and (d) in connection with the acts alleged.

Count III charges that respondent used his trust account for purposes other than those permitted by, and in violation of Rules of Professional Conduct, Rule 1.15.

### B.

The Master found and the record reflects that after consultation with the United States Attorney, respondent arranged for a deferral of the prosecution of the federal charge on the condition that Carpenter would provide restitution for the tax refund check improperly received. The amount of restitution was $796.89. Carpenter's mother, Donna Carpenter, borrowed $1,300.00 from her parents and paid that amount to respondent by cashier's check dated December 12, 1984. The cashier's check bore the notation, "Attorney fee, $500.00, fraud $796.00." Respondent deposited the check into his trust account, an account in which respondent also commingled his personal funds.

Carpenter signed the pretrial diversion agreement on April 1, 1984. Having provided respondent with $1,300.00 on December 12, 1984, Carpenter reasonably expected that respondent would make restitution to the Money Express Company [1] promptly. On May 31, 1985, respondent tendered a check for $796.89 to Money Express Company as restitution on behalf of Carpenter on the federal charge. Respondent's check was dishonored by respondent's bank and returned three times for insufficient funds. In June, 1985, Carpenter's probation officer asked her when she intended to make restitution. Thereafter, Carpenter and her mother attempted to contact respondent repeatedly, without success.

Money Express ultimately filed suit against respondent on the dishonored check and obtained a judgment. Money Express also filed a complaint with the Kansas City Metropolitan Bar Association. On November 21, 1985, after disciplinary proceedings were instituted, respondent paid Money Express cash to cover the dishonored check. Carpenter was not prosecuted; her probation was neither extended nor revoked.

Respondent appeared before Division II of the Sixteenth Judicial Circuit Bar Committee and claimed that he expended personal funds to "cover" the check, that neither the client nor her relatives advanced respondent any money to make restitution, and that respondent's client never fully reimbursed him. Respondent later admitted that he had misled the Committee when he made the above-mentioned three statements.

Carpenter also employed respondent to represent her on a claim brought by the Division that she illegally obtained and used $1,298.00 in food stamps. Respondent made arrangements for Carpenter to make restitution on the State charge and, again, Donna Carpenter borrowed $1,300.00 from her parents. Carpenter gave respondent a cashier's check dated December 15, 1984, for the purpose of making restitution on the Division's claim. The check bore the notation "For Division of Family Services (Helyn McGautha)". Again, respondent deposited the funds into his trust account. The trust account also contained respondent's commingled personal funds.

In January, 1985, Carpenter discovered that respondent had not made restitution when the Division filed suit against her. Respondent informed Carpenter that she need not appear in court. On February 26, 1985, the Division obtained a default judgment against Carpenter for $1,298.00 actual damages and $250.00 punitive damages. Respondent failed to inform Carpenter of the judgment. When informed that restitution had not been made, Carpenter in-

---

1. Carpenter cashed the falsely obtained tax refund check with the Money Express Company. The prosecution deferral agreement apparently

required Carpenter to reimburse Money Express.

formed the Division that she had provided respondent funds to make restitution. After being contacted for payment by the Division, respondent falsely stated that the funds would be sent in the mail immediately. Respondent did not mail the funds. After repeated attempts to collect the money from respondent, the Division instituted garnishment and sent respondent interrogatories as garnishee. Respondent failed to answer the interrogatories. A judgment was entered against respondent on October 24, 1985. Respondent finally paid the Division approximately one year from the date he received Carpenter's cashier's check for the payment.

## II.

Rule 1.15 provides:

(a) A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account maintained in the state where the lawyer's office is situated, or elsewhere with the consent of the client or third person. Other property shall be identified as such and appropriately safeguarded. Complete records of such account funds and other property shall be kept by the lawyer and shall be preserved for a period of five years after termination of the representation.

(b) Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this Rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such property.

Rule 8.4 provides:

It is professional misconduct for a lawyer to:

(a) violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;

(b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects;

(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;

(d) engage in conduct that is prejudicial to the administration of justice;

. . .

The Special Master concluded that (1) on two occasions respondent failed to keep funds given him by his client for third parties, separate from his own funds in violation of Rule 1.15(a); (2) on two occasions respondent failed promptly to deliver to third parties funds entrusted to him by his clients for such prompt delivery to third persons in violation of Rule 1.15(b); (3) respondent gave his personal insufficient funds check for funds entrusted to his client; failed to satisfy same after demand; falsely promised to make satisfaction; and finally, delayed satisfaction for more than five months in violation of Rule 8.4(a), (b) and (c); (4) respondent violated Rule 8.4(a), (c) and (d) by failing to advise his client of the judgment entered against her in favor of the Division of Family Services; by delaying payment to the Division of Family Services for nearly twelve months; and by requiring the Division of Family Services to obtain judgment against respondent as garnishee before finally satisfying the Division of Family Services; and (5) respondent made sworn false statements to the Bar Committee in violation of Rule 8.4(c) and (d).

The Master also found that in the Summer of 1982, respondent became an abuser of cocaine, and that by the Winter of 1984 and the Spring of 1985, had acquired a habit requiring in excess of $750 per week. Respondent was hospitalized in September, 1986 for detoxification. Respondent now claims to be drug free.

Respondent filed exceptions to the Master's report in which respondent agrees to the Master's findings of fact as to those portions of Count I charging respondent with failure to carry out his representation

of Carpenter on the federal charges. He does not agree however, with the Master's finding that he purposefully lied to the Bar Committee. Respondent admits that he supplied inaccurate information to the Committee, but claims that he described the events of the previous year as best he recalled them and that any inaccurate statements were unintentional.

As to Count II, respondent argues that he never agreed to represent Carpenter on the judicial proceedings arising from the food stamp claim. Instead, respondent argues that another attorney, George Wheeler, entered his appearance on behalf of Carpenter in those proceedings, and as a result, maintained the obligation of representing her.[2] Respondent does not dispute however, that Carpenter gave him funds to make restitution to the Division or that he failed to make such restitution for nearly a year after accepting the funds. Respondent accedes to the remainder of the Master's findings.

### III.

We recognize that the findings of the Special Master in disciplinary proceedings are essentially advisory. *In re Hardge,* 713 S.W.2d 503 (Mo. banc 1986). Our review of the record supports, and we therefore adopt, the master's findings of fact and conclusions of law.

The purpose of attorney discipline is to protect the public and maintain the integrity of the legal profession. *In re Littleton,* 719 S.W.2d 772, 777 (Mo. banc 1986). The legal profession requires an attorney to exhibit "the utmost good faith toward his client and the highest loyalty and devotion to his client's interests." *In re Thomasson's Estate,* 346 Mo. 911, 144 S.W.2d 79, 83 (Mo. banc 1940). "A breach of fidelity to a client's interest constitutes constructive fraud." *In the Matter of Oliver,* 365 Mo. 656, 285 S.W.2d 648 (Mo. banc 1956).

We have held that:

It is always a ground for disbarment of an attorney that he has misappropriated the funds of his client, either by failing to pay over money collected by him for his client or by appropriating to his own use funds entrusted to his care. [citation omitted]. That respondent has made restitution of the converted funds is no defense to the charges.

*In re Mentrup,* 665 S.W.2d 324, 325 (Mo. banc 1984).

In our view, respondent's conduct constitutes violations of Rule 1.15(a) and (b) and Rule 8.4(a), (c) and (d). Consistent with our precedents, respondent's conduct is sufficiently grievous to warrant disbarment.

In his sole point before this Court, respondent argues that his cocaine abuse is a mitigating factor and that this Court should refer respondent to the Intervention Committee established under Rule 16, in lieu of disbarment.

Rule 16 provides a basis for intercepting substance abuse problems in members of the bench and bar. In stating its purpose, Rule 16.01 provides: "The Intervention Committee is established to encourage the identification of substance abuse in the legal profession so that rehabilitation programs may be imposed to reduce *potential harm or injury to the public....*" [emphasis added].

The Intervention Committee's authority is intended to extend to a member of the bar who exhibits conduct which may lead to harm to the public and which appears to be the product of substance abuse. Rule 16 is not intended to act as a defense for an attorney who has violated the Rules of Professional Conduct. The provisions of Rule 16 are preventive; while recognizing the relationship between acts of professional misconduct and substance abuse, the Rule provides no basis for mitigation or compassion when acts of professional misconduct result in harm to clients.

Respondent's success in his battle to defeat the scourge of cocaine may be an issue for consideration should he apply for readmission. Having harmed his client, and brought reproach to his profession, however, respondent cannot invoke Rule 16 to

---

**2.** The record reveals that Wheeler filed a motion withdrawing as Carpenter's attorney and naming respondent as her new attorney, on January 14, 1985.

save him from the just fruits of his misdeeds.

Respondent is disbarred.

All concur.