**In re Ross G. LAVIN, Respondent.**

**No. 71504.**

Supreme Court of Missouri,
En Banc.

April 17, 1990.

Harvey S. Leader, Clayton, for informant.

Robert T. Ebert, Florissant, for respondent.

BILLINGS, Judge.

Disciplinary proceeding brought by the Twenty–Second Judicial Circuit Bar Committee against attorney Ross G. Lavin. After a complaint was made by Marlene Poser, the Committee conducted a formal hearing and voted to file an information charging Lavin with the violation of the following rules:

*DR 6–101(A)(3),* "A lawyer shall not neglect a legal matter entrusted to him."

*DR 7–101(A)(2),* "A lawyer shall not intentionally fail to carry out a contact of employment entered into with a client for professional services, but he may withdraw as permitted under *DR 2–110, DR 5–102* and *DR 5–105.*"

*DR 1–102(A)(6),* "A lawyer shall not engage in any other conduct that adversely reflects on his fitness to practice law."

The Honorable Daniel T. Tillman, appointed special master by this Court, made findings of fact and conclusions of law, and determined that Lavin should be disciplined.

This Court recently stated in *In re Staab,* 785 S.W.2d 551 (Mo. banc 1990):

The Master's findings, conclusions and recommendation in a disciplinary proceeding are advisory in nature. *In re*

*Adams,* 737 S.W.2d 714, 717 (Mo. banc 1987); *In re Hardge,* 713 S.W.2d 503, 504 (Mo. banc 1986). The Court must review the evidence *de novo,* determine for itself the credibility, weight and value of the witnesses, and make its own conclusions of law. *In re Murphy,* 732 S.W.2d 895, 902 (Mo. banc 1987); *Matter of Williams,* 711 S.W.2d 518, 519 (Mo. banc 1986).

The Court agrees with the Master's findings, conclusions and determination that discipline is warranted.

The Master found that in January of 1985, Poser, a Missouri resident, went to Lavin seeking assistance in two areas, arising out of her Indiana divorce. First, the collection of approximately $3,500 owed to her by her former husband, Arthur, in back child support, and second, the increase of Arthur's future child support payments. In May of 1985, Poser sent Lavin a check for $200, which Lavin immediately cashed. However, Lavin took no action for Poser. Four months later, in September, Poser again contacted Lavin to check on his progress. Lavin then proceeded to write a letter to Arthur, demanding payment. Arthur's attorney, first claimed Arthur was not in arrears, but later said Poser was owed only $1120. Lavin responded by letter.

In October, Arthur, a resident of Indiana, commenced proceedings in the Indiana court against Poser seeking custody of the children, a determination that he was not in arrears, and a contempt order against Poser for her alleged refusal to allow him to visit the children. When Poser was served with the subpoena and papers, she again contacted Lavin. Lavin informed her that he would now require an additional $1700, if she wished for him to represent her in Indiana. Lavin told Poser that the additional money would cover two trips to Indiana, modification of the original decree and related fees and expenses. Poser borrowed $1000 from a family member, but was unable to come up with additional funds. Lavin suggested she sell anything she had of value. Poser attempted to sell her piano, but was unable to do so. Lavin then arranged for a friend to buy the piano and give the purchase price of $700 directly to him.

Throughout December, January, February and March, Lavin failed to keep Poser informed of the progress of her case. Poser made repeated attempts to contact Lavin, but Lavin refused to return her calls. Lavin did file a special entry of appearance in Indiana and prepared a document to register Poser's divorce in Missouri as a foreign judgment. However, Lavin never filed the document because Poser did not pay a $97 filing fee, even though he had received $1900. At no time did Lavin travel to Indiana on Poser's behalf.

Finally, in late March, Poser terminated Lavin's services and requested that he "cancel all the motions." Poser indicated to Lavin that she had settled the case with Arthur. However, no settlement had in fact occurred. Lavin took no further action on the case. He did not withdraw his entry of appearance in the Indiana action, nor make any attempt to determine whether Arthur's petition had been dismissed, or inform Poser that a hearing was scheduled on May 19th.

By default, the Indiana court held for Arthur on all grounds, including the determination that Arthur did not owe Poser back support.

Poser then filed a complaint with the Bar Association of Metropolitan St. Louis. A fee arbitration hearing was held but Lavin refused to attend or agree to be bound by the decision. The arbitrator determined that a reasonable fee for Lavin's services would be $450, and that Lavin should return the remaining $1450 to Poser. Lavin has refused to make any refund.

Lavin has previously been disciplined, receiving a Letter of Admonition from the Committee in another matter.

█ The first charge against Lavin is that he violated *DR 6–101(A)(3),* which states, "[a] lawyer shall not neglect a legal matter entrusted to him." It is not disputed that Lavin initially took no action on Poser's behalf. Lavin received and cashed Poser's check on May 9, 1985, but four

months passed before Lavin, after again being contacted by Poser, did any work on the case.

■ Lavin appears to argue that as no permanent harm was caused by the delay, there has been no neglect. However, the lack of harm to a client's interest does not excuse the neglect of that interest. Further, Poser was in fact harmed by Lavin's inaction. Poser had requested that Lavin give legal assistance in two areas. First, to help her obtain back child support. During the four month period of Lavin's inaction, Poser was denied the benefit of the back child support and her former husband continued to make less than adequate payments. Second, Poser requested that Lavin take the necessary steps to increase future support payments and his inactivity again denied Poser a possible benefit of an increase in payment.

The Master also found that Lavin had further neglected Poser's case because he failed to take any action to increase the future payments. Lavin did draft a motion to register the original divorce decree as a foreign judgment, however, he did not file the motion. No further attempts to increase future payments were made. Lavin also failed to keep Poser informed of the progress of the litigation, even to the extent of refusing to return her repeated phone calls. Finally, on March 26, 1986, frustrated with Lavin's inaction and refusal to communicate, Poser terminated his services.

Lavin is also guilty of neglect of Poser's case after his termination. After Lavin entered a special appearance in Indiana on Poser's behalf, a hearing was scheduled for April 23, 1986. Lavin did nothing. He did not withdraw his appearance, nor speak to opposing counsel to see if the action had been dismissed or if settlement documents had been filed, nor warn Poser of the impending hearing. Consequently, Poser was unrepresented at the hearing, and the Indiana court determined that Arthur did not owe back support.

The second charge against Lavin is that he violated *DR 7–101(A)(2)*, by failing to represent his client zealously. *DR 7– 101(A)(2)* states, "[a] lawyer shall not intentionally fail to carry out a contract of employment entered into with a client for professional services, but he may withdraw as permitted under *DR 2–110, DR 5–102* and *DR 5–105.*" As previously discussed, Lavin failed to act for the first four months he was employed by Poser and then, once he began the representation, he failed to keep Poser informed of the progress of the case and failed to file any document in an effort to increase future support payments.

Finally, Lavin is charged with the violation of *DR 1–102(A)(6)*, which states, "[a] lawyer shall not engage in any other conduct that adversely reflects on his fitness to practice law." Lavin is admittedly an alcoholic. It is clear from the evidence that his alcoholism was at least partially responsible for his inaction in this case. Further, Lavin specifically requested the Master consider his alcoholism as a mitigating circumstance. There can be no doubt that Lavin has allowed this addiction to interfere with his practice of law. Lavin has submitted himself to a Rule 16 Intervention Committee rehabilitation program. While his cooperation with the committee is a necessary step towards recovery, it does not exonerate him of responsibility for his actions.

The bottom line in this case is that for various reasons, including poor or no communications by respondent to his client, the child support matter dragged on for more than a year—with no positive results and, in fact, adverse results, despite respondent having been paid a total of $1,900. Telephone calls to respondent went unanswered and the client was not kept informed. And, the rift between respondent and his client was aggravated by respondent retaining all of the $1,900 fee.

■ Disbarment is the ultimate sanction in attorney disciplinary proceedings, therefore, disbarment will only be appropriate if it is demonstrably clear that the attorney is not fit to continue in the legal profession. *In re Staab*, 719 S.W.2d 780 (Mo.banc 1986). Suspension is an appropriate intermediate sanction for attorney discipline where a reprimand is insufficient to

protect the public and to maintain the integrity of the legal profession and where the Court does not believe that the acts of the attorney are such that he should be disbarred. *In re Littleton*, 719 S.W.2d 772 (Mo.banc 1986).

It is therefore ordered that Lavin be suspended indefinitely from the practice of law with leave to reapply after four months and his showing that he has met the following conditions: first, that he show proof that he has made restitution to Poser of $1450, the amount the arbitrator determined she was owed; second, that he continues to cooperate with the Intervention Committee. Further, that respondent comply in all respects with Rule 5.21 (Notification of Clients and Counsel). Costs are taxed against respondent. Such suspension shall commence on the date of rendition of this decision.

All concur.