**In re George H. BARR, Respondent.**

**No. 72047.**

Supreme Court of Missouri, En Banc.

Oct. 16, 1990.

James R. Hobbs, Kansas City, for informant.

**618**

George H. Barr, Kansas City, pro se.

BILLINGS, Judge.

Disciplinary proceeding by the Sixteenth Judicial Circuit Bar Committee pursuant to Rule 5 [1] against respondent George H. Barr. A five count information filed September 11, 1989, in this Court charged respondent with violation of *Rules 1.1, 1.3, 1.4, 1.15* and *8.1* of *Supreme Court Rule 4.*

■ The Honorable Carl D. Gum, Circuit Judge of the Eighteenth Judicial Circuit, was appointed Master to hear the proceedings, and to make findings of fact and conclusions of law. The Master recommended disbarment. While the Master's findings, conclusions and recommendation are necessary to the orderly supervision of the bar, they remain advisory. *In re Staab,* 719 S.W.2d 780, 781 (Mo. banc 1986); *In re Hardge,* 713 S.W.2d 503, 504 (Mo. banc 1986). This Court must review the evidence *de novo,* assess witness credibility, and make its own conclusions of law. *In re Lavin,* 788 S.W.2d 282, 283 (Mo. banc 1990). The Court concludes that respondent's violations warrant an indefinite suspension from the practice of law, with leave to reapply after six months.

■ Initially, the Court notes its inherent, original jurisdiction over attorney disciplinary matters in this State, *In re Wilson,* 391 S.W.2d 914, 917 (Mo. banc 1965), and *In re McMullin,* 370 S.W.2d 151, 151 (Mo. banc 1963), notwithstanding any agreement which may have been struck between respondent and informant, the Circuit Bar Committee for the Sixteenth Judicial Circuit, as to dismissal of the Information.

■ Andrei Hill, Gerald Taylor and Norris Williams were employed at the Kansas University Medical Center. Believing they were victims of racial discrimination by their employer, the three sought the services of Steven Wickersham, a Kansas City attorney. Later, Hill, Taylor and Williams thought that Wickersham had mishandled their claims. They then sought the services of respondent to file a legal malpractice suit against Wickersham.

Respondent met with Hill, Taylor and Williams sometime in 1982. He accepted three filing fees, $61.00 apiece, for the purpose of filing the clients' malpractice claims against Wickersham.

## A. The Hill and Williams claims

Respondent never filed suit on behalf of Hill and Williams, nor did he procure a settlement for the two. Though respondent had judged that the Hill and Williams claims were not worth filing, he never attempted to contact either client to give them the "bad news," and has not returned their filing fees.

Hill attempted to call Respondent every three to six months, up to 1985. Respondent either did not return Hill's calls or could not reach him; respondent did not correspond with him. Hill then moved to Wichita, Kansas, where he stayed from 1985 to 1989, but visited respondent's office once or twice during that period. Unable to see respondent when he dropped in, Hill left messages with the secretary. Again, respondent did not contact Hill.

Respondent does not claim to have ever attempted to contact Williams personally concerning the status of his case. Further, respondent's claim that he kept Hill and Williams reasonably informed *via* Taylor, as the "contact person," fails for lack of proof.

Finally, respondent never discussed a fee with Hill and Williams, and no bill was ever sent. Hill believed respondent would take a percentage of any amount respondent recovered for him from Wickersham. There is no evidence in the record of the amount of time respondent spent on Hill and Williams' cases.

## B. The Taylor claim

Although respondent first met with the clients in March of 1982 concerning the Wickersham matter, it was not until April 19, 1983, that respondent first contacted Wickersham to begin settlement negotiations. Whether respondent had the clients'

1. All references are to the Missouri Supreme Court Rules.

authority to settle is not clear from the record; at the very least, it can be said respondent did not have authority to make his initial settlement demand for the amount of $4000.00 per client, sometime in March of 1984. Settlement negotiations dragged on.

Finally on December 17, 1986, respondent filed a legal malpractice suit against Wickersham on behalf of Taylor alone. Aside from the suit having been filed some four years after Taylor first gave respondent the filing fee, the applicable statute of limitations had run in the interim. Respondent also dropped all settlement negotiations on behalf of Hill and Williams at that time.

In early 1988, Wickersham offered $750.00 in settlement of Taylor's claim. At respondent's urging, Taylor signed a release of his causes of action against Wickersham, and endorsed the Wickersham check which had been made out to both Taylor and respondent. Respondent took the check and deposited it in a nontrust account, in his own name, in a bank in Kansas City, Kansas. Respondent never gave Taylor any of the settlement proceeds, though Taylor has requested the money, and though at one time respondent trotted out the old bromide: "the check is in the mail."

Respondent claims that other legal services he had performed for Taylor, for which respondent remains unpaid, justifies his withholding of the settlement proceeds, as *per Rule 1.15, Comment.* Indeed, respondent has collected assorted papers, handbooks, photocopies and the like from Taylor on the Wickersham matter, as well as on other employment and nonemployment matters. Respondent has in the past drafted letters to various persons on Taylor's behalf, and represented Taylor in at least one employment-related hearing.

Respondent claims that as to legal services rendered prior to the Wickersham matter, he and Taylor had a loose "understanding" that whenever Taylor could pay, he would pay. Yet respondent also admits that Taylor built a fireplace in respondent's office as, at least, part payment for respondent's past services. At the hearing before the Master, respondent claimed to have spent in excess of 30 hours on legal matters on Taylor's behalf. Simply put, however, there exist in the record no fee agreements, and no credible evidence of the time that respondent spent on the Wickersham matter, or on any other matter, in his representation of Taylor.

At the hearing, respondent admitted Counts I, II, III and V of the five-count Information, and agreed to pay restitution to Hill and Taylor. In return, informant dropped Count IV, the so-called "noncooperation" count, and recommended only a 60–day suspension from practice. Regardless, informant's recommendation, and indeed the Master's, as to the proper sanction were but advisory to the Master and this Court, respectively.

Counts I, III and V of the Information essentially reiterate each other. Respondent is charged with violating the following provisions of Supreme Court Rule 4:

*Rule 1.1, COMPETENCE*—"A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation."

*Rule 1.3, DILIGENCE*—"A lawyer shall act with reasonable diligence and promptness in representing a client."

*Rule 1.4, COMMUNICATION*—"(a) A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information. (b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation."

The foregoing discussion of the facts demonstrates respondent violated these rules. Respondent did not thoroughly pursue relief for Hill and Williams, in that no malpractice suits were ever filed on their behalf, and no settlements were reached. If respondent determined their claims were groundless, it was incumbent upon him to promptly inform them. Respondent did not.

Respondent did not timely file Taylor's malpractice suit, and his negotiation efforts may not have been authorized by any of the clients.

Respondent also failed to keep Hill, Taylor and Williams informed of the developments in their cases, and failed to give them information about their cases when they requested it. It is no excuse that Taylor, as the "contact person," did not pass along information from respondent to Hill and Williams, even if respondent in fact attempted to do so. *See Matter of Williams,* 711 S.W.2d 518, 522 (Mo. banc 1986).

Count III of the Information charges respondent with violating:

*Rule 1.15, SAFEKEEPING PROPERTY* —"(a) [F]unds shall be kept in a separate account maintained in the state where the lawyer's office is situated, or elsewhere with the consent of the client ... (b) Upon receiving funds ... in which a client ... has an interest, a lawyer shall promptly notify the client.... Except as stated in this Rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client ... any funds ... that the client ... is entitled to receive...."

Respondent admits he put Taylor's $750 settlement check into a non-trust account, in an out-of-state bank. Taylor did not consent to the check's deposit outside Missouri, nor did Taylor give respondent permission to hold the proceeds of the check.

Respondent relies on the *Comment* to *Rule 1.15* as justification for his withholding the proceeds of the settlement check. The *Comment,* in pertinent part, states: "Lawyers often receive funds from third parties from which the lawyer's fee will be paid. If there is risk that the client may divert the funds without paying the fee, the lawyer is not required to remit the portion from which the fee is to be paid." Respondent claims that since Taylor has not paid for legal services previously provided, respondent is entitled to an attorney's lien on the funds.

While the Court does not quarrel with the propriety of an attorney's lien in the proper case, respondent has failed to provide any credible proof of time spent, or agreements between he and Taylor as to fees owed him by Taylor for the Wickersham case, or any other matters. Further, respondent has never stated he believed that Taylor would divert any funds received without paying the attorney fees owed.

The Court is also disturbed by respondent's failure to maintain a trust account for the deposit of his client's funds, as well as his depositing the check in an out-of-state bank.

This Court recently stated in *In re Lavin,* 788 S.W.2d 282, 284–285 (1990):

> Disbarment is the ultimate sanction in attorney disciplinary proceedings, therefore, disbarment will only be appropriate if it is demonstrably clear that the attorney is not fit to continue in the legal profession. *In re Staab,* 719 S.W.2d 780 (Mo. banc 1986). Suspension is an appropriate intermediate sanction for attorney discipline where a reprimand is insufficient to protect the public and to maintain the integrity of the legal profession and where the Court does not believe that the acts of the attorney are such that he should be disbarred. *In re Littleton,* 719 S.W.2d 772 (Mo. banc 1986).

Further, "the discipline must be designed to correct any antisocial tendency on the part of the attorney as well as to deter others who might tend to engage in similar violations." *In re Staab,* 785 S.W.2d 551, 554 (Mo. banc 1990) (citations omitted).

It is therefore ordered that respondent be suspended indefinitely from the practice of law with leave to reapply after six months and his showing that he has met the following conditions: first, he make restitution to Taylor in the amount of $750.00; second, he must make restitution to Hill, Taylor and Williams in the amount of $61.00 each for filing fees. Third, respondent take and pass the Multistate Professional Responsibility Examination.[2]

---

**2.** This condition for reinstatement has now been adopted by the Court in the recent revision of

Further, respondent must comply in all respects with *Rule 5.21 (Notification of Clients and Counsel)*.

Costs are taxed against respondent. Such suspension shall commence on the date of rendition of this decision.

All concur.

---

*Rule 5,* effective July 1, 1991. See *Rule*     *5.26(a)(4).*