In re C. John **FORGE, Jr.,** Respondent.

No. 68301.

Supreme Court of Missouri,
En Banc.

March 15, 1988.

Rehearing Denied April 19, 1988.

William E. Quirk, Kansas City, for informant.

C. John Forge, Jr., Independence, for respondent.

ROBERTSON, Judge.

This is a disciplinary proceeding instituted by the Sixteenth Judicial Circuit Bar Committee ("the Committee") against respondent C. John Forge, Jr., a licensed attorney who became a member of the Missouri Bar April 30, 1960. After informal and formal hearings, the Committee filed an information charging respondent with professional misconduct. This Court appointed the Honorable William J. Roberts, Presiding Judge of the Twenty-Seventh Circuit, Special Master. The cause was submitted to the Master upon a joint waiver of a hearing. The Master filed findings of fact and conclusions of law and recommended that respondent be suspended from the practice of law.

### I.

#### A.

Upon complaint instituted by Charles J. Bohm, with whom respondent Forge had entered an attorney-client relationship, the Committee filed an information charging respondent with violating: (1) DR 9–102(C)(3)[1] and DR 1–102(A)(5) & (6) by failing to account to Bohm for the client's funds; (2) DR 1–102(A)(4) & (6) for failure to apply funds received by Bohm for the purposes stated; (3) DR 9–102(B) "to the extent that any part of the funds were to be applied against legal fees incurred in the appeal to the 8th Circuit Court of Appeals, respondent did not deposit them in a client trust account"; and (4) Rule 8.4(c) & (d)[2] for "false and misleading representations" made to the Committee by respondent during hearings concerning the Bohm complaint.

#### B.

The Master found that respondent represented Bohm in an action against Trans World Airlines (TWA) in the federal district court. The case was tried on October 26, 1981, and resulted in a verdict for TWA. Costs were assessed against Bohm. Bohm asked respondent to appeal. By letter of

---

1. Disciplinary Rule (DR) references are to this Court's Rule 4 (repealed January 1, 1986).

2. Rule references are to this Court's Rule 4 effective January 1, 1986.

December 29, 1981, respondent requested that Bohm provide $1,500 "to cover the costs of the transcript and notice of appeal."[3] Bohm sent respondent the $1,500. Respondent filed a timely notice of appeal. The appeal, however, was dismissed for want of prosecution. Respondent never ordered or paid for a transcript; none of the $1,500 was applied to the District Court costs.

Before the Committee, Forge testified that the deposit from Bohm was to be used as a retainer for respondent's attorney's fees for the appeal and for costs assessed against Bohm in the district court action. Bohm repeatedly contacted respondent by mail seeking the status of his case and, later, an accounting, but received no response. Bohm ultimately filed a complaint with the Sixteenth Judicial Circuit Bar Committee.

On May 2, 1985, the Committee held an informal hearing, after which it requested that respondent provide a complete accounting for his use of Bohm's $1,500. Respondent did not respond to the Committee's request. The Committee notified respondent by certified letter dated October 24, 1985, that a hearing was set for October 31, 1985, to investigate the matter further. Receipt of the certified letter was acknowledged by respondent's secretary.

Respondent did not appear at the October 31 hearing or communicate with the Committee in any manner regarding the hearing. Respondent claims that he was moving his office on October 31, 1985, and his secretary did not inform him of the letter or the hearing. Forge also testified that his secretary was new, having been hired October 20, 1985.

The Committee thereafter filed formal charges against respondent, setting a formal hearing for January 16, 1986. At the formal hearing, respondent presented a copy of a bank statement from the Chrisman Sawyer Bank, which he represented as his trust account. The statement bore the words "Trust Account." Respondent stated that he intended this account to be his trust account and that he never used the account for any other purposes. However, it was determined at the hearing that the $1,500 check from Bohm was originally deposited by respondent into an account at the Blue Ridge Bank & Trust Company on January 24, 1982. This account was not a trust account but a personal checking account held in the names of respondent and his wife. The checks from this account contained respondent's home address and home phone number. Respondent used checks from this account during January and February of 1982, to cover his personal expenses. The balance in this account dropped below $1,500 on at least three occasions. Although the record is not clear, it appears that respondent subsequently closed the Blue Ridge Bank & Trust account and opened a new account at the Chrisman Sawyer Bank. The new account bore respondent's name and that of his wife.

On January 17, 1986, the day following the initial formal hearing in this matter, Forge returned Bohm's $1,500.

At a subsequent formal hearing on April 24, 1986, respondent admitted that he had typed the words "Trust Account" onto the bank statement next to the name "C. John Forge" before giving it to the Committee for its consideration. The original bank record showed that the words "Trust Account" did not appear on the original statement.

In response to questions regarding the addition of the words "Trust Account" to the bank statements, Forge said:

I understand you people think that I have attempted to lie to you and deceive you. Maybe I hoped you jumped to conclusions. Maybe that made me—maybe that is an accurate way to state it. I have never stated anything untruthful to this Committee as an untruth or lie to you specifically. I am not going to say that at some time early on in this situation I didn't hope that maybe you would

---

**3.** Forge's letter to Bohm provided in pertinent part: "If you desire to appeal this decision you should let me know immediately and provide me with approximately $1,500.00 to cover the costs of the transcript and Notice of Appeal."

jump to some conclusions and get off my back.

Further, at the hearing on April 24, 1986, respondent stated to the Committee that he paid interest to his clients on the funds in his trust account. However, the evidence revealed that respondent returned to Bohm only the amount which Bohm had originally furnished respondent four years earlier.

The Master concluded that respondent violated DR 1–102(B) by depositing and maintaining Bohm's $1,500 in a personal bank account with his wife, which resulted in a commingling of funds. The Master concluded that by not accounting to Bohm for the funds received in January of 1982, respondent was in violation of DR 9–102(C)(3). The Master found respondent in violation of DR 1–102(A)(4) & (6) for failing to respond to correspondence from the Committee and failing to appear at the hearing. The Master determined that respondent violated Rule 8.4(c) & (d) by presenting a copy of a paper purporting to be a bank statement of his trust account and typing the words "Trust Account" on that document and for misrepresenting the use of his joint bank account.

Respondent does not dispute the Master's findings of fact before this Court.

## II.

We recognize that the Master's findings of fact and conclusions of law are essentially advisory. *In re Hardge,* 713 S.W.2d 503, 504 (Mo. banc 1986). After reviewing the record, however, we adopt the Master's findings of fact.

The charges against respondent involve two separate classes of alleged unethical conduct. The first involves respondent's attorney-client relationship with Bohm. The second focuses on respondent's conduct before the Committee. We discuss these issues independently.

### A.

■ The Committee charges respondent with a violation of DR 9–102(B). That disciplinary rule states in pertinent part: All funds of clients paid to a lawyer or law firm, *other than advances for costs and expenses,* shall be deposited in one or more identifiable insured depository accounts.... [Emphasis added.]

Had Forge chosen to stand on his letter requesting funds from Bohm before the Committee, no violation of DR 9–102(B) could be shown. Under the plain language of DR 9–102(B), advances for costs and expenses need not be placed in a trust account. However, Forge testified that Bohm's funds were sought, at least in part, as attorney's fees. DR 9–102(B)(2) requires that such payments be paid into a trust account.

Which Forge do we believe? The answer is not clear from the record. It is beyond dispute, however, that Forge did not treat the funds as costs and expenses, but instead placed them in an account in which his personal funds were commingled. Forge's actions are thus inconsistent with his letter and consistent with his testimony. The Master apparently so found. DR 9–102(B)(2) applies; Forge violated its proscriptions.

Forge does not dispute the Master's conclusion that he failed to account to Bohm for his use of the $1,500, despite repeated requests to do so. Respondent's conduct contravened DR 9–102(C)(3).

### B.

■ Respondent's conduct before the Committee consisted of initial failures to cooperate and, after his decision to cooperate, testimony which hardly skimmed the surface of the truth. Specifically, respondent failed to respond to the Committee's initial informal request for an accounting of the $1,500 and failed to appear at the October 31, 1985 hearing set by the Committee. When respondent finally appeared at a hearing, he attempted to mislead the Committee by typing the words "Trust Account" on his bank statement; the original statement bore no such notation. Further, respondent told the Committee that he paid interest to his client on the funds in his "trust account." Bohm ultimately received his $1,500 from Forge after a four-year wait—without interest.

In *In re Staab*, 719 S.W.2d 780, 783–4 (Mo. banc 1986), this Court joined "a growing majority of states [which] explicitly entertain as attorney misconduct the failure to cooperate with disciplinary authorities.... [W]ell evidenced repetition of noncooperation ... justifies the conclusion that [a] respondent does not fully understand the profound duty imposed by his profession."

Rule 8.4(c) prohibits a lawyer from engaging in conduct involving misrepresentation. Rule 8.4(d) proscribes conduct that is prejudicial to the administration of justice. We conclude that respondent's conduct before the Committee violates Rule 8.4(c) & (d).

### III.

We turn now to aggravation and mitigation issues. The Master found no aggravating circumstances. We agree.

As to mitigation, the Master found that Bohm's funds were not misappropriated, that respondent realized no personal gain from his actions, and, though no defense, respondent voluntarily repaid Bohm. It appears from the record that Forge has conducted the financial management of his practice without benefit of a trust account for over 25 years and that no client suffered a financial deprivation as a result.

It also appears that respondent suffered unfortunate personal, emotional trauma during the early pendency of this complaint. The Master found that at the time respondent failed to respond to the Committee's letters and hearings, respondent was dissolving a law partnership, moving to a new office and had a new, inexperienced secretary. In addition, during the pendency of Bohm's district court litigation, respondent's father-in-law (who lived with respondent and his wife) died. Respondent's first wife died of cancer in 1980, his mother died in 1981. The Master found that for two years after his wife's death, respondent suffered extreme mental strain which adversely affected his practice of law.

Any discipline imposed by this Court has as its objective the protection of the public and the maintenance of the integrity of the profession. *In re Maier*, 664 S.W.2d 1, 2 (Mo. banc 1984). Disbarment is reserved only for clear cases of severe misconduct. *In re Mendell*, 693 S.W.2d 76, 78 (Mo. banc 1985). To disbar an attorney it must be clear that the attorney is not fit to continue in this profession. *Staab*, 719 S.W.2d at 784.

Suspension, on the other hand,
[I]s an appropriate intermediate sanction where reprimand is insufficient to protect the public and maintain the integrity of the profession, and where this Court does not believe that the acts of a respondent are such that he should not be at Bar. Suspension serves the dual purposes of discipline; it protects the public and maintains the integrity of the profession by deterring other members of the bar from engaging in similar conduct.
*In re Littleton*, 719 S.W.2d 772, 777–8 (Mo. banc 1986).

In the absence of mitigating circumstances, this Court has determined that disbarment is the appropriate sanction where a client's funds are commingled with those of the attorney. *In re Witte*, 615 S.W.2d 421, 428 (Mo. banc 1981). In this case, the presence of mitigating circumstances and respondent's record of no prior, improper conduct compel a conclusion that suspension is appropriate.

We believe that absent respondent's attempts to mislead the Committee, a less severe sanction would be sufficient. However, respondent chose to trifle with the Committee by embarking upon a consciously chosen course of prevarication and attempted obfuscation. Bar committee proceedings are a vitally important link in the attorney discipline chain. We depend on our bar committees to investigate allegations of unethical conduct and bring to our attention those attorneys whose regard for the ethical norms of their profession falls below the standards membership in the bar demands. We expect members of the bar to cooperate promptly and candidly with bar committees. Those who knowingly

seek to mislead those committees, and in so doing interfere with their work, do so at their peril.

Respondent is suspended from the practice of law for six months. Costs are assessed against respondent.

BILLINGS, C.J., DONNELLY, WELLIVER, RENDLEN and HIGGINS, JJ., and MORGAN, Senior Judge, concur.

BLACKMAR, J., not sitting.