**In re Norman STRICKER, Respondent.**

**No. 72311.**

Supreme Court of Missouri,
En Banc.

May 3, 1991.

Rehearing Denied June 11, 1991.

Cara L. Detring, Farmington, for informant.

David Kueter, Steelville, for respondent.

## ORIGINAL DISCIPLINARY PROCEEDING

COVINGTON, Judge.

This is an original disciplinary proceeding instituted by the Bar Committee of the 24th Judicial Circuit pursuant to *Rule 5* against respondent, Norman Stricker. The information charged Mr. Stricker with violation of several provisions of *Rules 1, 3, 4* and *8* of *Rule 4*, Rules of Professional Conduct. The Court appointed as Master to hear the proceeding the Honorable Lewis M. Blanton, Associate Judge of the 33rd Judicial Circuit. Judge Blanton made findings and recommended that respondent be reprimanded by this Court. In a disciplinary proceeding the Master's findings, conclusions and recommendations are advisory in nature. This Court reviews the evidence *de novo*, determines independently the credibility, weight and value of the testimony of the witnesses, and draws its own conclusions of law. *In re Waldron*, 790 S.W.2d 456, 457 (Mo. banc 1990). Discipline is warranted when a respondent's guilt is established by a preponderance of the evidence. *Matter of Smith*, 749 S.W.2d 408, 410 (Mo. banc 1988).

The facts of this case reflect a pattern of a lawyer's failures to communicate with and be available to both the court and his clients. Mr. Stricker, who has been paralyzed from the chest down since 1975, received a license to practice law in 1985. He conducts a solo practice in Potosi, Missouri. He originally maintained his office in his home, a few blocks from the courthouse. In 1988 he moved his office to a location nearer the courthouse. Early in 1989 he removed the office to his home.

In February, 1989, the Washington County circuit clerk wrote a letter to the bar association regarding certain conduct of Mr. Stricker. On May 5, 1989, the 24th Judicial Circuit Bar Committee conducted an informal hearing to consider the clerk's and others' complaints against Mr. Stricker. The committee determined that the misconduct was serious, but as a result of Mr. Stricker's admission of fault, and in light of his physical condition, the committee imposed discipline in the form of a letter of admonition. Mr. Stricker was admonished, specifically, for failure to appear timely at a scheduled court hearing and for inaccessibility and delay in handling his clients' affairs in violation of *Rules 1.3, 3.2* and *1.4*. The committee recommended that Mr. Stricker, because of his physical condition, either associate with co-counsel or refrain from involving himself in certain litigation. It also recommended that he undertake procedures to ensure that his clients could get messages to him and that he reply promptly to his clients.

Less than three months subsequent, Fred McDaniel, superintendent of Southeast Missouri Mental Health Center, filed a complaint citing Mr. Stricker's rude and condescending behavior while Mr. Stricker was on the premises of the mental health center purporting to represent a client. In August, 1989, Candide Cooper, Washington County Prosecuting Attorney, sent a letter of complaint to the bar association after she investigated circumstances surrounding Mr. Stricker's failure to appear for a bench trial in the case of State v. Robert Lee Campbell. That same month a client of Mr. Stricker wrote a letter to the bar association complaining that Mr. Stricker refused to withdraw from her case.

In response to these complaints, the 24th Circuit Bar Committee conducted a formal hearing on November, 28, 1989. The committee determined that, in general, the complaints involved the same types of subject matter as the complaints leading to the informal hearing. Because Mr. Stricker's conduct was of a continuing nature, the committee filed an information with this Court, alleging three counts of misconduct.

Informant alleges in Count I that on July 29, 1989, Mr. Stricker appeared on the grounds of the Southeast Missouri Mental Health Center purporting to represent a client who was represented by other counsel, without authorization of the other counsel. It further alleges that Mr. Stricker exhibited behavior that was rude and condescending, positioned his wheelchair so as to deny institution staff access to his client, and followed staff into an area that was off limits. The information charges that Mr. Stricker's behavior was calculated to contribute to confusion of legal and medical issues, that the behavior was harassing and intimidating and did not uphold the legal process, all in violation of *Rules 8.4(d)* and *4.4*.

The Master recommended that this Court dismiss Count I. Informant has not pursued the allegations in its brief. After reviewing the evidence, this Court agrees with the Master that the informant failed to prove the allegations of Count I by a preponderance of the evidence. Count I is dismissed.

Count III, related to Count I, alleges that Mr. Stricker failed to cooperate with the bar committee in its investigation of the complaint of Mr. McDaniel, and that this conduct constitutes a violation of *Rule 8.1*. The Master found that Mr. Stricker made no reply to this allegation and deemed it admitted. The Master nevertheless recommended that this Court take no action on Count III in view of the dismissal of Count I.

This Court does not agree with the Master's recommendation on Count III. Following Mr. McDaniel's complaint, the bar committee sent a letter to Mr. Stricker informing him of the complaint and instructing him to respond with a letter of explanation within ten days. Mr. Stricker did not respond. *Rule 8.1(b)* provides, in connection with a disciplinary matter, that a lawyer shall not fail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter. This case illustrates the rationale underlying the rule. Had Mr. Stricker responded to the bar committee's letter and

provided the evidence that he later presented at the disciplinary hearing, the matter could have been resolved promptly. The duty to cooperate with the committee is not dependent upon the merits of the complaint. Mr. Stricker's failure to cooperate constitutes a violation of *Rule 8.1*.

■ Count II charges Mr. Stricker with failure to make himself available to his clients and to the court, in violation of *Rules 1.1, 1.3, 1.4, 1.16, 3.2, 3.4, 4.1, 4.4, 8.1* and *8.3(c)*. He is charged in particular with: (A) failure timely to appear at scheduled court hearings and to be available to the court and court personnel; (B) failure to make himself available to communicate with clients and with other counsel; (C) failure timely to communicate with clients and to vigorously pursue litigation to protect his clients' interests; (D) failure to withdraw in a case in which his client asked him to withdraw; and (E) misrepresenting his name, identity and location to the prosecuting attorney, who was attempting to locate him after he had failed to appear for a trial. The information also alleges that subparagraphs A, B, C and D describe the same kinds of behavior and neglect that led to the reprimand in May of 1989.

The evidence to support the allegations of Count II was provided chiefly through the testimony of the Washington County prosecutor, her secretary, the circuit clerk and a retired division clerk. The prosecutor, Ms. Cooper, testified that Mr. Stricker failed to appear for trial on August 1, 1989, in the case of State v. Campbell. She also testified that in the two years prior to the August, 1990, hearing Mr. Stricker failed to attend scheduled court appearances "more than ten times, probably less than twenty." Ms. Cooper could recall no such instance in the previous six months. She also testified that until a week before the hearing before the Master, her office had been unable to leave a message on Mr. Stricker's answering machine.

Catherine Politte, retired division clerk for the Washington County Circuit Court, testified that Mr. Stricker was more prone to miss appearances than other attorneys in the circuit. During 1989 she had not always been able to reach Mr. Stricker by telephone and there was no answering machine at that time. She testified that there were "several instances" in 1989 of attorneys and clients calling to ask how to get in touch with Mr. Stricker. She received more complaints from Mr. Stricker's clients about their inability to reach their attorney than she did from clients of other attorneys. She also testified that she could not recall any difficulty reaching Mr. Stricker in 1990.

Circuit clerk Phyllis Ann Fryman recalled five or six occasions in 1989 when Mr. Stricker failed to appear at a scheduled court appearance. Mrs. Fryman testified of numerous telephone calls from attorneys complaining that they could not contact Mr. Stricker. She also testified that some of Mr. Stricker's clients were in the clerk's office once a week to ask why nothing had been done in their cases; they had been told that the clerks were responsible for papers not being filed and for delays in their cases, when that was simply not the case.

Mr. Stricker testified that he underwent operations on both kidneys in April, 1989, and was hospitalized with severe kidney infections before that. He maintained that following his recuperation he is much better able to handle his cases.

In regard to the Campbell case, Mr. Stricker contends that he and his client had effected a plea bargain with Ms. Cooper two or three weeks before the August 1 trial date, and they had agreed to a continuance until August 15. According to the docket sheet, however, notice of the August 1 trial date was given on June 14. The next entry shows Mr. Stricker's failure to appear on August 1. The earliest record of a request for a plea hearing was the docket entry for August 8, when the cause was passed to August 15 for a plea.

A lawyer is to act with reasonable diligence in representing a client, *Rule 1.3*, and make reasonable efforts to expedite litigation, *Rule 3.2*. Mr. Stricker's conduct in 1989 constituted a violation of these rules. His was a dismal record of missed court appearances in 1989 and court per-

sonnel were often unable to contact him or to leave messages. A lawyer is to keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information. *Rule 1.4(a)*. The numerous inquiries and complaints received by circuit court personnel indicate that Mr. Stricker's clients and opposing counsel were often unable to contact him and that he failed to communicate properly with clients. This pattern of conduct has resulted in the violation of *Rules 1.4(a)*, *1.3* and *3.2*. Mr. Stricker has not vigorously pursued litigation on behalf of his clients. The effect of his lack of diligence was exacerbated when Mr. Stricker told clients that the circuit clerk's office was responsible for delays in their cases. The evidence supports the allegations of subparagraphs A, B and C.

The record in the case of BeAndrews v. BeAndrews supports the allegation of subparagraph D. Mr. Stricker represented Sherry BeAndrews, who filed a petition for dissolution in August, 1987. The docket sheet reflects no activity in the case from November, 1987, until June 23, 1989, when a notarized letter from Mrs. BeAndrews to Mr. Stricker was filed with the court. In the letter Mrs. BeAndrews stated: "I have called several times asking you to withdraw from my case.... I told you that it was important to respond right away and I would like for you to take care of this matter immediately." It was not until December 5, 1989, after the formal hearing before the bar committee, that Mr. Stricker finally withdrew.

In response to the allegations of subparagraph D, Mr. Stricker testified that, although he had done a great deal of work in this case, he had received only the filing fee. The parties reconciled and Mr. Stricker advised his client to dismiss the case. She refused. She also failed to respond to monthly bills from Mr. Stricker. Mr. Stricker claims that he did not receive the letter from Mrs. BeAndrews. He states that he withdrew from the case after Legal Services of Eastern Missouri informed him that it would take the case if he would withdraw. Prior to that, with the case dormant and no response to his billing, he

had "failed to see the urgency of it." The Master found, however, and this Court agrees, that Mr. Stricker failed to withdraw from the representation of a client after he was discharged, in violation of *Rule 1.16(a)(3)*.

The record as it relates to the allegations of subparagraph E also supports the Master's findings. After Mr. Stricker's failure to appear in the case of State v. Campbell, the prosecuting attorney tried unsuccessfully to telephone him at home. She learned that Mr. Stricker was in the courthouse early that morning and mentioned going to Ste. Genevieve County. Ms. Cooper contacted the Ste. Genevieve circuit clerk and learned that, although Mr. Stricker's name was not on the docket for that day, which was law day, he had been seen at the courthouse. Ms. Cooper's secretary called Mr. Stricker's office several times that afternoon without answer. When someone finally answered, the voice said, "Well, Mr. Stricker's not here." The secretary recognized the voice and told Ms. Cooper that Mr. Stricker was on the line. Ms. Cooper took the telephone and said, "This is Candide Cooper calling for Mr. Stricker." The voice, which Ms. Cooper also recognized as Mr. Stricker's, answered, "He's not here." When Ms. Cooper asked, "Who are you?" he said, "I'm Mr. Stricker's nephew." Ms. Cooper asked for his name, address, telephone number and employment. He gave and spelled the name "Clifford Hults." He gave an address in Imperial, Missouri, but could not remember the zip code. He said he did not have a telephone and was not employed.

Ms. Cooper asked the individual to inquire of Mr. Stricker why he was not in court. After a long pause she was told that "Mr. Stricker told me" that he had a case set in Ste. Genevieve County. When she asked him to ask Mr. Stricker for the name of the case, there was another pause, then he said that Mr. Stricker was sleeping and couldn't be asked about the case. Ms. Cooper then asked the individual to come to the courthouse to explain the situation because the judge was very irritated, but he would not do it.

Ms. Cooper requested the sheriff's department to go to Mr. Stricker's home to record the license numbers of all the vehicles parked near his home. None was licensed to anyone named Hults. Ms. Cooper had her secretary contact the Imperial Post Office, which informed her that the address given over the telephone did not exist. Later that day Ms. Cooper had a police dispatcher "pull up" the name of Clifford Hults. Only one person by that name was found. He had a St. Louis County address. A St. Louis county officer went to the address, but found that Hults had moved about a year earlier.

Mr. Stricker's testimony before the Master in response to the allegations of paragraph E of Count II can be summarized as follows: Mr. Stricker and his client had worked out a plea bargain with Ms. Cooper two or three weeks before the August 1 trial date, and they had agreed to a continuance until August 15. He went to the Washington County courtroom early on the morning of August 1 to check the docket. He had two cases on the docket but, believing both were "taken care of," he went to Ste. Genevieve to meet a client. His client's boyfriend drove him down there and back. By the time they returned to Potosi he was extremely sick because of the heat. Clifford Hults, a second cousin, was at Mr. Stricker's house when he returned. Hults helped him into bed. Later Hults told him there was someone on the phone and he answered a couple of questions from Hults. When Hults came back again Mr. Stricker "bawled him out and told him to get away and leave me alone."

At the hearing before the bar committee Mr. Stricker stated that he did not see the importance of trying to produce Clifford Hults. Before the Master, Mr. Stricker testified that he was unable to contact Hults and that his family told him Hults was out of the state. He said Hults' father, whose name was "Milford or something," lived "somewhere in Illinois" but was talking about moving to Florida; Hults' sister, his only other close relative, was in Egypt. Mr. Stricker's further re-

sponse was that Ms. Cooper was engaged in a vendetta against him. As bases for the vendetta he cited a complaint he made to Ms. Cooper about a newspaper article appearing in the local paper on June 21, 1989, and "terrible battles" between the two at meetings of the county Handicapped Board.

The Master found, and this Court agrees, that Mr. Stricker misrepresented his name and identity to the prosecuting attorney. It is professional misconduct for a lawyer to engage in conduct involving dishonesty, fraud, deceit or misrepresentation. *Rule 8.4(c)*. The Master further found that Mr. Stricker had notice of the hearing and that a witness had been subpoenaed, yet Mr. Stricker failed to appear. This Court also finds that Mr. Stricker made these misrepresentations, in violation of *Rule 8.4(c)*.[1]

Mr. Stricker's lack of veracity in relation to the Campbell matter is part of a disturbing pattern. The pattern is typified by the circumstances surrounding the case of Snyder v. Snyder, in which Mr. Stricker represented the petitioner wife. A hearing was scheduled for January 12, 1989. Opposing counsel and both parties, including the respondent husband who had traveled from Texas, were present. Mr. Stricker did not appear and neither his client nor the clerk's office was able to contact him. Mr. Stricker maintained before the Master that opposing counsel in the Snyder case informed him that his client would not be able to come up from Texas for the hearing and that they had agreed to a continuance. Mr. Clinton Roberts, chairman of the bar committee, testified, however, that Mr. Stricker had not made this claim at the informal hearing. There Mr. Stricker admitted all the allegations, noted his illness and indicated he wanted to improve his practice. This Court finds Mr. Roberts' testimony credible. The matter of Snyder v. Snyder was before the bar committee at the May hearing and Mr. Stricker's conduct in January, 1989, should not form the basis for a new allegation. His behavior, however, is relevant in that it reveals a course of conduct. At the informal hearing Mr. Stricker

---

1. As noted by the Master, the information incorrectly cites *Rule 8.3(c)*.

admitted his fault. Before the Master, in the face of his earlier admission and contrary testimony by the chairman of the bar committee, Mr. Stricker denied fault.

It is not without sympathy for respondent's disability that the Court reviews the record in this case and contemplates the unpleasant task of determining appropriate discipline. The principle that the disciplinary proceeding is conducted for the public's protection, however, must guide this Court's undertaking. The facts reveal that the lawyer's problems remain. A summary recapitulation reflects that in May of 1989 respondent underwent an informal hearing and was admonished by the bar committee. Although, subsequent to the admonishment, respondent's conduct appears to have improved somewhat, his failures to act according to the Rules of Professional Conduct continued. In addition, respondent failed to cooperate with the bar committee relative to the McDaniel complaint. In the proceeding before the Master, respondent denied having received notice of a hearing in the Campbell matter and denied that he failed to appear in court, claiming that there was a plea agreement reached. He testified under oath to matters directly contradicted by exhibits in the case and other credible evidence. Respondent has not explained the discrepancies (he filed no brief in this Court), nor has he accepted responsibility for his actions.

This Court considers the veracity of the attorney in the disciplinary proceedings to be of great importance. *In re Waldron*, 790 S.W.2d 456, 461 (Mo. banc 1990). Coupling the need for the attorney's veracity with the purpose of the disciplinary proceeding, this Court finds the Master's recommendation for reprimand insufficient. Mr. Stricker appears not to confront his difficulties but rather to use them to avoid the consequences of his inattentiveness and untruthfulness. Mr. Stricker's license to practice law is ordered suspended. He is given leave to apply for readmission in six months. As a prerequisite to readmission, Mr. Stricker is ordered to take advantage of the Missouri Lawyers' Assistance Program provided by the Missouri Bar, or an equivalent counselling program, the pur-

pose of which is to provide counselling for lawyers with problems leading to mismanagement of a law practice and arising as a result of impairment, be it physical, psychological, or other. The counselling shall be established and maintained in consultation with the Advisory Committee. Costs are taxed against the respondent.

BLACKMAR, C.J., ROBERTSON, HIGGINS and HOLSTEIN, JJ., and MAUS, Special Judge, concur.

RENDLEN, J., dissents in separate opinion filed.

BILLINGS, J., not sitting.

RENDLEN, Judge, dissenting.

For the reasons following, I respectfully dissent. A number of facts in mitigation warrant discussion.

Respondent a sole practitioner in Potosi, Missouri, for approximately six years, is paralyzed from the waist down as a result of fall suffered in 1975. Presently and for much of the time here involved respondent conducted his practice from his home located a few blocks from the county courthouse. And though seldom has he enjoyed the services of a regular secretary, occasionally a part-time secretary manned the office phone. Recently he has acquired an answering machine to monitor incoming calls.

The charge here involved among others several subcharges including: (1) failing to timely appear at scheduled court hearings and has been unavailable to court personnel; (2) failing to make himself available to communicate with his clients and other counsel; (3) failing to timely communicate with his clients and to pursue vigorously litigation to protect his clients' interest, (4) failing to withdraw as counsel when he was asked to do so by his client and (5) that respondent lied to the Prosecutor to hide his identity and failed to appear for trial.

At the disciplinary hearing, the evidence as to subcharge (1) included testimony of the Prosecuting Attorney, the Division Clerk of the Associate Division, and Circuit Clerk of Washington County, as well as

records of a case in which respondent had served as counsel. These witnesses claimed that respondent had failed to appear at several scheduled hearings and had been difficult to contact; further the Prosecuting Attorney had resorted to tacking messages on the front door of respondent's home to contact him.

Respondent's failure to appear at scheduled court proceedings was disruptive of the system impairing the court's efforts to dispose of litigation. However, each witness who testified to these matters noted that it has been easier to contact respondent since his acquisition of the answering machine.

Subcharges 2 and 3 rest on the hearsay testimony of the clerks of the circuit and associate circuit courts. Both testified that clients of respondent and opposing attorneys frequently contacted their respective offices attempting to reach respondent. The circuit clerk further testified that during 1989 several of respondent's clients visited his office complaining because certain matters remained unattended in their cases. Many clients had stated respondent claimed to have performed the requested service but review of their files revealed nothing seemed to have been accomplished.

Nevertheless both clerks testified it had been much easier to contact respondent, especially after acquisition of the answering machine, in the months preceding the disciplinary hearing. Although respondent denied these allegations of inattention to his clients' needs, he admitted having been hospitalized for periods of time in 1989 due to an urological disease which required surgery on both kidneys followed by a protracted period of recovery and that he was forced to withdraw as counsel from certain cases. Additionally, respondent conceded that prior to the summer of 1990 he did not have a reliable system to receive incoming calls from clients.

Subcharge (4) alleges that respondent failed to withdraw as counsel in a case though repeatedly requested by the client so to do. On August 6, 1987, respondent filed a petition for dissolution of marriage on behalf of Sherry BeAndrews. The record reveals that on June 22, 1989, BeAndrews sent a letter bearing a notary acknowledgment asking that respondent withdraw as counsel and in that letter stated she had previously requested respondent's withdrawal. Respondent did not withdraw until December 1989, but contends he did not receive the June 22 letter. BeAndrews in a August 17, 1989, letter to the Missouri Bar Association stated that respondent had refused to withdraw from the case because he claimed she had failed to pay for past services. Other letters demonstrate that in July 1989, BeAndrews was attempting to obtain new counsel through Legal Services of Eastern Missouri, Inc. who mailed a letter to respondent informing him of BeAndrews' attempts to contact him.

Most certainly attempts were made by BeAndrews and others to contact respondent and discharge him as counsel and respondent's contrary testimony is insufficient to meet the charge. Rule 1.16 provides that an attorney once discharged shall withdraw from representation of the client and here respondent appears to have procrastinated for at least six months before effecting his withdrawal. Because he failed to act when the client made known her wishes, the charge of subcharge (4) was sustained.

Subcharge 5 alleges that respondent lied to the Washington County Prosecuting Attorney to hide his identity and whereabouts after he had failed to appear for trial. Sucharge 5 stems from an incident described in the testimony of Candide Cooper, Prosecuting Attorney of Washington County. Cooper testified that on August 1, 1989, she was present at court ready for a bench trial of *State v. Campbell* set that day in which respondent represented the defendant. At the appointed hour respondent failed to appear and could not be located.

Though the evidence bears identifiable traces of a spiteful attitude less than commendable for a prosecutor, the docket sheet for the Campbell case reveals that on June 13, the court set the matter for trial on August 1. That after respondent's Au-

gust first "no-show" the matter was reset for August 8 where respondent and his client appeared and requested the matter continued till August 15 for entry of a plea. Further, the facts as related by Cooper were refuted only by respondent.

Finally the complaint alleges that respondent, in violation of Rule 4–8.1(b), failed to cooperate with the Committee in its investigation of a complaint filed by Fred McDaniel. McDaniel is the superintendent of Southeast Missouri Mental Health Center. It was his complaint which led to Count I of the information which the Master found failed for insufficient proof.

Clinton Roberts, chairman of the Committee, testified that a letter was sent August 17, 1989, to respondent informing him of the complaint filed by McDaniel and that respondent was to respond to such with a letter of explanation in ten days. No such response was received by the Committee.

The Special Master in his findings recommended that because the complaint of McDaniel should be dismissed no action should be taken. However Rule 4–8.1(b) provides that an attorney involved in a disciplinary matter shall not "fail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter" and we have held that failure to cooperate with the disciplinary authorities may constitute attorney misconduct warranting sanctions. *In re Staab*, 719 S.W.2d 780, 784 (Mo. banc 1986). The basis of the misconduct for failing to cooperate does not rest upon the merit of the complaint, rather cooperation with the Committee is expected of all attorneys so that such matters may receive prompt resolution. Had respondent responded to the letter from the Committee outlining the evidence later presented at the disciplinary hearing, this matter could have been expeditiously dispatched without need for hearing and review by this Court. It is important however that respondent's action was an isolated event and since that time he has cooperated fully with the Committee's investigation in this matter.

In deciding the appropriate sanction I note that respondent, from all testimony gathered, has taken steps to correct the deficiencies of his practice. These include the purchase and operation of an answering machine and the use of call forwarding. Several testifying on behalf of the Committee emphasized it had become easier to contact him in recent months.

While mindful of respondent's physical handicap and the difficulties this produces in his daily life, such does not excuse the misconduct nor alter the fact the practice of law requires a high level of competence and he must hereafter effect measures to ensure such professional performance of his duties. This entails appearing at scheduled court appearances and providing reasonable means for communications with clients and attorneys alike. If unable to properly serve a client in a particular matter he should withdraw from such case. Significantly most of the allegations raised in the information appear to have occurred in 1989 when respondent was hospitalized and undergoing major surgery. Respondent testified that since that time his health has improved and the record bears witness that since his recovery he is more readily available to clients and officers of the court.

In disciplinary proceedings the Court's objective is to protect society and maintain the integrity of the legal profession, *In re Adelman*, 734 S.W.2d 509, 511 (Mo. banc 1987), and to that end the ultimate sanction is disbarment. Such action is reserved for cases of extreme misconduct and it must be clear the attorney is not fit to continue in the profession. *In re Waldron*, 790 S.W.2d 456, 461 (Mo. banc 1990). Respondent's actions cannot be said to merit disbarment.

Appointed Special Master, the Honorable Lewis M. Blanton after plenary hearing found respondent had violated certain of the rules and recommended public reprimand. Similarly I conclude reprimand is the appropriate sanction for this case in which the misconduct resulted in minimal harm to the client and the attorney received no personal gain from his actions, *In re Kopf*, 767 S.W.2d 20, 23 (Mo. banc 1989), and this determination is reinforced by the

fact that respondent has resolved most of the difficulties which led to the proliferation of complaints.