In re Timothy L. DONAHO, Jr., Respondent.

No. SC 84742.

Supreme Court of Missouri, En Banc.

March 18, 2003.

Sharon K. Weedin, Office of the Chief Disciplinary Counsel, Jefferson City, for Informant.

Timothy L. Donaho, Jr., Collinsville, IL, for Respondent.

ORIGINAL DISCIPLINARY PROCEEDING

LIMBAUGH, Chief Justice.

This is an original disciplinary proceeding filed in two counts in which the Chief

Disciplinary Counsel (CDC) charges Respondent, Timothy L. Donaho, Jr., with multiple violations of the rules of professional conduct in relation to 1) his representation of a client in a child custody case, and 2) his attempt to deceive disciplinary authorities. Respondent, having now conceded the violations, is suspended indefinitely from the practice of law with leave to reapply in one year.

## I.

The parties have stipulated to the following facts:

Respondent is an attorney licensed to practice law in both Illinois and Missouri. While practicing in Illinois, Respondent was retained by Ms. Donna Campbell to represent her in a post-dissolution of marriage proceeding in which Campbell was seeking amendment of a child visitation order. Campbell paid Respondent $760 in advance—$700 for Respondent's fee and $60 for court costs. Respondent then drafted the necessary motion and forwarded it to Campbell for her signature. Campbell promptly signed and returned the motion; however, for unknown reasons, Respondent took no further action and failed to file the completed motion in a court of law.

Approximately six months after he agreed to represent Campbell in the post-dissolution matter, Respondent closed his Illinois law practice and relocated his office to St. Louis. He did not inform Campbell of the change of address or his new telephone number. Concerned about the status of her case, Campbell tried to reach Respondent by telephone. When she discovered that his office telephone had been disconnected, she left numerous telephone messages at his home. Respondent never returned these calls. After learning that Respondent had moved his law practice, Campbell repeatedly tried to contact him at the new office. When this failed, she sent a certified letter to the office, which, although signed as received, elicited no response.

A friend of Campbell's then sent a letter on Campbell's behalf, requesting a refund of the unearned fee. Respondent replied that he would refund the money if Campbell would sign a release terminating the representation and discharging him from all potential liability in connection with the representation. Respondent drafted the release himself, but did not advise Campbell to seek independent legal advice before agreeing to the proposed settlement. Although Campbell signed and returned the release, Respondent did not refund the money as promised.

Campbell then filed a complaint with the CDC and also filed suit in small claims court to recover the funds paid in advance. Respondent did not appear before the small claims court; consequently, a default judgment was entered against him in the amount of $765 plus costs.

Respondent did, however, answer the charges brought before the disciplinary committee to which his case was assigned. While the case was pending, the committee informed Respondent that timely restitution of the judgment would be regarded as a mitigating factor, and further advised that satisfaction of the judgment would be viewed favorably only if Respondent provided the committee with evidence of payment by a certain date.

In ostensible compliance with the committee's directive, Respondent faxed to the committee copies of two money orders, representing the full amount of the outstanding judgment. Both were payable to Campbell. The fax cover sheet bore a handwritten notation from Respondent, stating that the money orders had been sent to Campbell by certified mail and that

Respondent would forward the receipt of delivery at a later date. Relying on the evidence of repayment contained in the fax, the committee then voted to issue an admonition and closed the file.

However, despite his assurances to the contrary, Respondent never mailed the money orders, returning instead to the place of purchase and cashing them in for his own use. When Campbell did not receive the payment, she filed another complaint against Respondent with the Illinois disciplinary authorities and Missouri's CDC. The Illinois Supreme Court imposed a six-month suspension.

Upon learning that the money orders had not been forwarded as promised, the CDC charged Respondent with violations of Rules 4–1.3, 4–1.4, 4–1.16(d), 4–3.2, 4–3.3, 4–8.1(b) and 4–8.4(c). At the hearing before a disciplinary hearing panel, Respondent testified that he failed to satisfy the judgment as indicated on the fax cover sheet because, at that time, he had financial problems and "debts of a higher priority." Respondent attributed his actions to the fact that he was a "lousy business person" and, consequently, could not be "trust[ed] . . . with much money." He further described himself as a "recovering alcoholic," but does not believe that his drinking problem impaired his judgment or affected his behavior during the time in question. The disciplinary hearing panel determined that Respondent had violated the disciplinary rules as charged, finding that Respondent did not act with reasonable diligence as required by Rule 4–1.3; did not keep his client reasonably informed or comply with reasonable requests for information in compliance with Rule 4–1.4; failed to terminate the representation in accordance with Rule 4–1.16(d); failed to make reasonable efforts to expedite litigation as mandated by Rule 4–3.2; failed to act with candor toward a tribunal in violation of Rule 4–3.3; knowingly made false statements and did not correct misapprehension in a disciplinary matter in violation of Rule 4.8–1(b); and engaged in conduct involving fraud, deceit, dishonesty or misrepresentation in violation of Rule 4–8.4(c). Based upon these findings, the panel recommended suspension of Respondent's license with leave to apply for reinstatement in nine months.

Respondent did not stipulate to the panel's recommendation, causing the record to be filed with this Court. In this action, Respondent does not contest the panel's determination that he violated the rules of professional conduct, as charged, but argues solely that a reprimand, or at most a six-month suspension, is the appropriate sanction.

## II.

In disciplinary proceedings, the disciplinary hearing panel's recommendation as to the appropriate measure of discipline is merely advisory. *In re Snyder,* 35 S.W.3d 380, 382 (Mo. banc 2000). Although this Court gives considerable weight to the panel's suggestion, it must independently review the record and determine the punishment necessary to both "protect the public, and maintain the integrity of the legal profession." *In re Littleton,* 719 S.W.2d 772, 777 (Mo. banc 1986). These two objectives are paramount because as members of a self-regulating profession, we must be ever mindful that, at minimum, the public should be able to rely upon "an attorney's honesty and devotion to his clients' interests." *In re Haggerty,* 661 S.W.2d 8, 10 (Mo. banc 1983).

Here, Respondent's actions call into question both his honesty and his dedication to the interests of his client. Regarding the charges relating to Respondent's representation of Ms. Campbell, the evidence clearly demonstrates, and Respon-

dent does not dispute, that he failed to perform even the most basic duties owed to his client by failing to file the necessary child visitation motion and repeatedly refusing to inform Campbell of the status of her case. Respondent offers no valid justification for his failure to fulfill these basic obligations, stating simply that, though he realized he needed to contact Ms. Campbell, he just "wound up ignoring her." As noted in the disciplinary rules, "[p]erhaps no professional shortcoming is more widely resented than procrastination." Rule 4–1.3, Comment. Of course, the fact that Respondent failed to refund the advance fee upon the termination of representation as required by Rule 4–1.16(d) compounds the problem.

But even then, leniency might be appropriate were it not for the remaining charges, all of which involve intentional deception of the very committee charged with ensuring that those licensed to serve as members of the bar act with the moral fortitude befitting the profession. *See In re Forge,* 747 S.W.2d 141, 145 (Mo. banc 1988) (noting that, "absent respondent's attempts to mislead the Committee, a less severe sanction would be sufficient"). This Court regards dishonesty before a disciplinary committee to be especially egregious.

> Bar committee proceedings are a vitally important link in the attorney discipline chain. We depend on our bar committees to investigate allegations of unethical conduct and bring to our attention those attorneys whose regard for the ethical norms of their profession falls below the standards membership in the bar demands. We expect members of the bar to cooperate promptly and candidly with bar committees. Those who knowingly seek to mislead those commit-

> tees, and in so doing interfere with their work, do so at their peril.

*Id.* at 145–46.

■ Furthermore, "[q]uestions of honesty go to the heart of fitness to practice law." *In re Disney,* 922 S.W.2d 12, 15 (Mo. banc 1996). "Misconduct involving subterfuge, failing to keep promises, and untrustworthiness undermine public confidence in not only the individual but in the bar." *Id.* Therefore, in order to protect the public, and maintain the integrity of the profession, a substantial penalty must be imposed.

■ The ability to practice law is a privilege, accorded only to those who "demonstrate the requisite ... moral character." *Haggerty,* 661 S.W.2d at 10. In choosing to "trifle with the [Disciplinary] Committee by embarking upon a consciously chosen course of prevarication and attempted obfuscation," Respondent has demonstrated questionable moral judgment, which raises serious doubts about his fitness to practice law. *Forge,* 747 S.W.2d at 145. Furthermore, these doubts are amplified by the fact that Respondent did not limit his mendacity to an isolated act during the disciplinary committee's investigation. In oral argument, before this very Court, Respondent repeatedly refused to acknowledge that his obvious fabrication could be characterized as "dishonest," preferring instead to describe it as merely "foolish." In fact, Respondent did not admit any ill-intent at all until this Court, in essence, advised Respondent that it would be in his best interest to concede that his actions were dishonest. And, even then, his response was equivocal at best: He admitted only that there were "elements of dishonesty involved." [1] Moreover, aside from be-

1. On the issue of dishonesty, the following exchange occurred between Respondent and

the Court:

ing barely credible as a matter of common sense, Respondent's explanation is directly contrary to his prior admissions that he faxed copies of the money orders for the purpose of misleading the committee. Yet, when questioned by this Court, he refused to acknowledge his duplicity. This continued apparent inability to understand the difference between the truth and fiction, and right and wrong, confirms that Respondent does not yet "fully understand the profound duty imposed by his profession." *In re Staab*, 719 S.W.2d 780, 784 (Mo. banc 1986).

■ Having determined that Respondent did a grave disservice to both his client and his profession, we must now consider the punishment needed to restore public confidence in the bar. When choosing a commensurate penalty, we must take into account the gravity of Respondent's misconduct, as well as any mitigating and aggravating factors that tend to shed light on Respondent's moral and intellectual fitness as an attorney. *See In re Cupples*, 979 S.W.2d 932, 936–37 (Mo. banc 1998).

■ To the extent that Respondent claims suspension is unwarranted and a reprimand is appropriate, his plea clearly must fail. "Reprimand ... is appropriate only where the attorney's breach of discipline ... does not involve dishonest, fraudulent, or deceitful conduct on the part of the attorney." *Littleton*, 719 S.W.2d at 777. Indeed, this Court has previously imposed the ultimate sanction of disbarment where attorneys have engaged in unethical conduct involving dishonesty. *See, e.g., In re Storment*, 873 S.W.2d 227, 231 (Mo. banc 1994); *In re Oberhellmann*, 873 S.W.2d 851, 856 (Mo. banc 1994); *In re Panek*, 585 S.W.2d 477, 479 (Mo. banc 1979). It should also be noted that, under the ABA Standards, disbarment would be justified under the facts of this case. Rule 6.11 states:

> Disbarment is generally appropriate when a lawyer, with the intent to de-

**The Court:** Do you—Do you concede ... that it was a dishonest act to ... imply to the Disciplinary Hearing Commission that you were paying this person back and then to take that money order back and cash it and keep the money?
**Respondent:** I would concede it was a foolish act. I would concede it's—
**The Court:** Why isn't it dishonest?
**Respondent:** I think on this record I don't know if you can make the analysis as to dishonesty. You can make the argument as to foolishness, as to improper. But as to dishonesty, there's not any predicate—In other words, for dishonesty to be established you have to show a scheme that the ill intent was. There's no evidence of that.
. . . .
**The Court:** I'm sorry, but under this record—I mean what did you do? Were you dishonest or not?
**Respondent:** I don't believe it was dishonesty. I believe it was foolishness, I think it was stupid, and it was certainly not wise. But in terms of dishonest, I don't believe the basis will be established—

**The Court:** Well, did you tell the Committee that you sent these money orders—did you send copies of the money orders to them and say, "I sent these to the client"—
**Respondent:** Yes.
**The Court:**—and then, in fact, not send them to the client?
**Respondent:** One was not sent to the client. That is correct.
. . . .
**The Court:** Let me—We're the ones charged with meting out discipline. You're representing yourself here ... and so whatever your conduct here before us now will reflect on your discipline. So you're still saying that what you did was not dishonest?
**Respondent:** I would have to concede there were certainly elements of dishonesty involved here. Whether it would rise to a threshold of—depending upon the standard that one wants to subscribe to dishonesty may have been my earlier answer, perhaps. That's maybe a little bit more a parsing of the language and [sic] I think the Court may appreciate.

ceive the court, makes a false statement, submits a false document, or improperly withholds material information, and causes serious or potentially serious injury to a party, or causes significant or potentially significant adverse effect on the legal proceeding.

ABA *Standards for Imposing Lawyer Sanctions,* Rule 6.11 (1986). However, where mitigating factors otherwise demonstrated the attorney's fitness to practice law, we have also imposed suspensions even though the case involved intentional deceit. *See, e.g., In re Stricker,* 808 S.W.2d 356, 361 (Mo. banc 1991); *In re Waldron,* 790 S.W.2d 456, 461–62 (Mo. banc 1990); *Forge,* 747 S.W.2d at 145–46.

After considering the various mitigating factors present in this case, this Court agrees with the disciplinary hearing panel's determination that, despite Respondent's indisputably dishonest behavior, the permanent revocation of Respondent's license is unnecessary. Respondent has no prior disciplinary record, and the evidence suggests that he may have been suffering from a drinking problem during the time in question, even though he specifically denies any causal relationship between his drinking habits and his misconduct. Furthermore, Respondent expressed remorse for his actions during the disciplinary hearing. Nevertheless, given the intentional and deceptive nature of Respondent's misconduct, as well as his refusal to acknowledge the dishonesty of his actions before this Court, we cannot conclude that a nine-month suspension will suffice to protect the public and maintain the integrity of the profession.

An attorney must be dedicated to the best interests of his clients and must act with unfailing honesty. In this case, Respondent failed in both respects. Therefore, this Court orders Respondent's license to practice law suspended indefinitely with leave to apply for reinstatement no sooner than twelve months from the date of this opinion.

All concur.